PERKINSON, Respondent, v. SCHNAAKE et al., Appellants.

St. Louis Court of Appeals, November 15, 1904.

1. MUNICIPAL CORPORATIONS: Taxbill: Reconstruction and Repairs. An action to enforce the lien of special taxbills against certain real estate for reconstructing the pavement in the street upon which the property abutted, could not be defended on the ground that it was repair work for which the city was liable instead of reconstruction, on account of the fact that the contractor repaired holes on the concrete foundation upon which the pavement was laid, where that part of the work was paid for by the city.

2. ———: ———: ———. Nor does an item for "removing old pavements and preparing road way" in the taxbill furnish a defense to the taxbill on the ground that it was repairs instead of reconstruction, in the absence of evidence concerning what work was included in the item, especially in the face of the fact that the city paid for repairing the concrete foundation.

3. ———: ———: ———. An item in a special taxbill for readjusting the curb which was not reconstructed, was repair work and should be eliminated from the taxbills.

4. ———: ———: Interest: Demand of Payment. To entitle the holder of a special taxbill to the fifteen per cent penal interest provided for after demand, the demand must be personal upon the owner of the ground against which the taxbill is assessed.

5. ———: ———: ———: ———: Waiver. But where the owner informed the holder of a taxbill that he would not pay the bill except at the end of a lawsuit, he waived the necessity of a formal demand.

5. ———: ———: ———: ———: Waiver. But where the mand for payment, so as to require interest, was made in a certain month and the exact date was not shown, it is presumed to have been made on the last day of the month.

Appeal from St. Louis City Circuit Court.—*Hon. Horatio D. Wood,* Judge.

REVERSED AND REMANDED (*with directions*).

*Theodore H. Culver* and *C. A. Schnaake* for appellants.

(1) The ordinance provides for the doing of five kinds of work, as one work, viz.: 1, the removal of the old roadway pavement; 2, the preparing of the roadway for the superstructure; 3, the removal of broken or defective curbstones; 4, the resetting of the curbstone, and 5, the paving of the roadway with vitrified brick. Defendant claims that under section 18 of article 6 of the scheme and charter, the work of preparing the roadway, and the removal of broken or defective curbstones and the substitution of new curbstones and the resetting of curbstones are "repairs" and shall be paid for by the city out of its general revenue fund—while the removal of the old pavement and the repaving of the roadway are a proper charge against the adjoining property. If our contention is right, then it must follow that the city had no power to pass such an ordinance, and make the entire cost a charge against the owner of the property—a lien upon his land. The work included in the ordinance was divisible, and could have been contracted for separately, so as to charge against the city the expenses of "repairs" and against the property-onwer the expenses of the removal of the old pavement and of the repaving with brick. Barber Asphalt Pav. Co. v. Hazel, 76 Mo. App. 149. (2) The work done on the concrete foundation, such as either the filling in with new hydraulic cement concrete of "depressions," or the filling in of the cuts into the concrete foundation was merely the restoration of it to a sound condition after injury, decay, sinking or falling in, and as such nothing else but repair; for there was no "rebuilding" and hence no "reconstruction." State ex rel. v. Corrigan, 85 Mo. 263; Farrar v. St. Louis, 80 Mo. 379; Verdin v. St. Louis, 131 Mo. 86, 33 S. W. 480; Bank v. Woesten, 147 Mo. 485, 48 S. W. 939; St. Louis Co. v. Frost, 90

Mo. App. 677; O'Meara v. Green, 25 Mo. App. 198; People v. Brooklyn, 21 Barb. 484. (3) And the resetting of curbstones is not an improvement, but merely a repair, and can not be charged as an improvement against the abutting real estate. Cronin v. Jersey City, 38 N. J. Law (9 Vroom) 410. (4) The ordinance, the contract and the taxbills treat the "removing old pavement and repaving roadway" and the "renewing curb" and the "readjusting curb" and the "paving with vitrified blocks" as one work, as an entirety, and as the contract includes work for which the city is liable and also some for which the property-owner is liable, the whole is null and void. Kansas City v. O'Connor, 82 Mo. App. 655; Summer v. Summer, 54 Mo. 340; Bick v. Seal, 45 Mo. App. 475; Friend v. Porter, 50 Mo. App. 89; Connor v. Black, 119 Mo. 126, 24 S. W. 184. (5) There was no such personal demand as to entitle the plaintiff to penal interest. Stifel v. MacManus, 74 Mo. App. 558.

*Kinealy & Kinealy* for respondent.

The question in issue in this case is whether or not that work constitutes a repair of the roadway or a reconstruction, and we submit that it is settled by repeated decisions of the courts of this State in favor of our contention, that it was a reconstruction. The city has an unquestioned right to reconstruct the street as the occasion may require and it is the judge of the necessity. McCormack v. Patchin, 53 Mo. 33; O'Meara v. Green, 25 Mo. App. 198; State ex rel. v. Railway, 85 Mo. App. 277; Verdin v. St. Louis, 131 Mo. 86, 33 S. W. 480, 36 S. W. 52; Levi v. Coyne, 57 S. W. 790; Farrell v. Rammelkamp, 64 Mo. App. 429; Farrahe v. Keokuk, 111 Iowa 310; Ritterskamp v. Stifel, 59 Mo. App. 510.

BLAND, P. J.—The suit is to charge lots Nos. 17 and 18, city block No. 1008, city of St. Louis, with the payment of two special taxbills for $76.79 each, al-

leged to have accrued for work done and materials furnished in reconstructing a portion of Easton avenue, on which the lots abut, under authority of city ordinance No. 19754 and city contract No. 6050.

On the trial it was stipulated as follows:

"It is agreed between the parties that the signatures on the taxbills, of Isaac H. Sturgeon and Hiram Phillips, are the signatures of those gentlemen, and that the taxbills may be offered in evidence, and may be considered with the same force and effect against all of the defendants as against the defendant Elise Schnaake, and that the defendants are the only parties interested in the property described in the petition."

The taxbills, ordinance No. 19754 and contract No. 6050 were read in evidence, and plaintiff offered evidence tending to prove that he made demand of payment of the taxbills on October 15, 1901, by presenting the bills for payment to Schnaake's wife at his place of residence. Schnaake was the owner of the property. Schnaake testified that plaintiff called on him about the taxbills, in January, 1902, and that he then told plaintiff, he would not pay the bills unless he had to at the end of a lawsuit. He said plaintiff made no formal demand of payment on that occasion. He also offered evidence tending to show that the demand made and left at his house by plaintiff, on October 15, 1901, was left with defendant's daughter, not with his wife, that the latter was not present and was not seen by plaintiff on that occasion.

The issues were submitted to the court who found for plaintiff and gave judgment for the full amount of the taxbills with penal interest, provided for by the city's charter. Defendant appealed.

1. The contention arises, not over the quality of the work done or the materials furnished, but as to whether certain portions of the work, charged for in the taxbills and provided for in the ordinance and contract, was work of reconstruction and properly charge-

able to the abutting owner, or was repair work chargeable to the city, under the provisions of the charter. The street as, the evidence shows, is an old one and had been originally constructed of macadam and subsequently reconstructed by putting in a concrete foundation with a wooden block surface laid on two inches of sand spread over the concrete. The wooden blocks became rotten and the ordinance (No. 19754) was passed by the city council for reconstruction with a vitrified brick surface. The ordinance and contract both required the contractor to remove the wooden blocks and old sand, to bring the concrete foundation to a proper surface, to repair holes and cuts in it, if any were found, to put the curb in proper condition, to replace any bad stone with new and lay the vitrified brick on two inches of new sand. When the wooden blocks and old sand were removed, it was found that in many places cuts had been made through the concrete foundation by the gas company for the purpose of laying its pipes and by the water department for the purpose of putting in water plugs. These cuts were filled in by plaintiff with new concrete. Plaintiff testified that in a few places the concrete foundation had sunk below the general surface and he brought these depressions up even with the general surface by a coating of concrete. His testimony, not contradicted by any of the evidence in the case, is that for filling in and repairing the cuts that had been made in the concrete foundation, he was paid by the city out of a special fund provided for that purpose, and that he was not paid at all for filling in the sunken depressions. There is no item for concrete work found in either of the taxbills, therefore, there is nothing concerning this work about which defendant can complain, certainly nothing that furnishes him any defense to the taxbills as he is not called upon to pay for the work. But he contends that this work is included in the item, "Removing old pavement and preparing roadway." The

evidence does not show just what is included or what is meant by "preparing roadway." There is no evidence about it. In the absence of explanatory evidence as to what is included in this item, we can not assume that the making or repairing of the concrete foundation is included in it, especially in the face of the fact that the city, with whom the contract for the work was made and whose street commissioner supervised it, paid the plaintiff for repairing the concrete foundation.

2. Concerning the curb, plaintiff testified as follows:

"Q. What did you do with the curbing there? A. Well, we straightened the curbing up wherever it was out of line, and some of the curbing that was in bad condition, broken up and rotten, we took out and broke up, and replaced it with new curbing.

"Q. You sometimes replaced defective curbing, and other times you reset the old curbing, did you? A. Yes, sir.

"Q. Well, what did you do with the curbing you took out? A. Why, it was in such a bad condition we just loaded it in a wagon and took it away and dumped it off in some dump.

"Q. Well, did you deliver any of it to the city? A. No, sir.

"Q. Where the city specified it should be delivered? A. The city did not specify where it should be delivered.

"Q. You took it where you pleased? A. Took it where we pleased.

"Q. When you put in new stone was it of the same character and same kind as that? A. Yes, sir.

"Q. You repaired it with the same material that the curbing had originally been made of? A. Yes, sir. It was lined with stone like the stone that was in before. It may not have come from the same quarry, but it was what the ordinance called for.

"Q. Now in doing that you were carrying out your contract? A. Yes, sir.

"Q. And the contract that you had made with the city? A. Yes, sir; under the supervision of the street department."

Each of the taxbills had an item for readjusting curb, so that both the evidence and the taxbills show that the curb was not reconstructed (made over) but lined up and repaired by replacing the rotten stones with new ones where necessary, and we think the item of $2.67 for this work in each of the taxbills should have been eliminated.

It is insisted that, under the evidence, the plaintiff was not entitled to recover the fifteen per cent per annum interest provided by the charter as a penalty for non-payment of the taxbills, on the ground that the evidence does not show a personal demand made on Schnaake (the owner) for payment of these taxbills.

In Stifel v. MacManus, 74 Mo. App. 559, we held that to entitle the holder of a special taxbill for street work to penal interest, the demand for payment must be personal. No personal demand was made on Schnaake before January, 1902, and no formal demand at that time. But his evidence shows that plaintiff called on him about these taxbills and that he then and there informed plaintiff he would not pay the bills except at the end of a lawsuit. This declaration dispensed with, or was a waiver of any formal demand and we think penal interest should be allowed from thirty days after the date plaintiff called on Schnaake. The exact date is not fixed. As the interest is penal, we think the date should be fixed at the last day of the month and that the interest should be calculated from the first day of March, 1902.

The judgment is reversed and cause remanded with directions to the trial court to enter judgment for plaintiff as herein indicated. All concur.