RACKLIFFE & GIBSON, Respondents, v. JOSEPHINE A. DUNCAN et al., Appellants.

Kansas City Court of Appeals, February 17, 1908.

1. CITIES OF SECOND CLASS: Council: Adjourned Meeting: Restriction of Charter. The legislative body of a municipality has when lawfully in session with a quorum, inherent power to adjourn to a future date, but when the charter imposes restrictions such regulations should be strictly followed, and a failure to do so will invalidate the proceedings at an adjourned meeting.

2. ———: ———: ———: ———. Council of second-class city met, having eleven of its fourteen members present. Five were

excused and for want of a quorum the council adjourned to a day certain. *Held,* the minority left was authorized to adjourn to a special day by statutory provision as a smaller number than a majority may adjourn from time to time and the record fails to show any purpose of breaking a quorum in order that an adjournment might be made by the minority.

3. **MUNICIPAL CORPORATIONS: Contract: Taxation: Discrimination.** A municipal corporation has no power to grant exemption for taxes, either general or special, and a contract which undertakes to do so is void. Neither can municipalities discriminate in favor of any property; and where a dedicator gave ground to widen a street on condition that the city should pave, curb and gutter the same and keep it in repair, the contract is void.

4. ———: **Street Improvements: Repairs: Reconstruction.** A street improvement is considered and held to be a reconstruction rather than a repairing of a street and, that tax bills for curbing and guttering were properly issued. [Parkinson v. Schnaake, 108 Mo. App. 255, distinguished and applied.]

Appeal from Buchanan Circuit Court.—*Hon. Henry M. Ramey,* Judge.

AFFIRMED.

*Chas. F. Strop* and *Eugene Silverman* for appellants.

(1) A valid ordinance can be passed only when the city council is assembled and acting as an organized body at a meeting held according to law. Meetings, the one at which this ordinance was introduced, and the one at which it was passed, were not legally convened and the ordinance is invalid. 2 Dillon, Municipal Corp. (3 Ed.), 324; Forry v. Ridge, 56 Mo. App. 615 and cas. cit.; City v. Jersey City, 25 N. J. Law 309; County v. Hendricks, 71 Cal. 242; Allen v. Burlington, 45 Vt. 210; Bloomfield v. Bank, 121 U. S. 121. (2) The inclusion of the cost of relaying guttering and resetting curbing in the taxbills issued to respondent was erroneous. This was "repair work" for which the city should have paid and charged against the property lia-

ble. R. S. 1899, sec. 5681; Perkinson v. Schnaake, 108 Mo. App. 256; Cronin v. Jersey City, 38 N. J. Law. 410. (3) The city had no power to issue valid taxbills for work done as a result of its failure to keep its contract.

*Fulkerson, Graham & Smith* for respondents.

(1) Legislative bodies have inherent powers of adjournment to a future date by majority vote where a quorum is present. McQuillin on Municipal Ordinances, sec. 111, pp. 177, 178; 1 Dillon on Municipal Corporations (2 Ed.), sec. 225, sec. 105, p. 167; Donough v. Hollister (Mich.), 46 N. W. 782; 1 Beach on Pub. Corp., sec. 268; Mo. Ann. Stat. 1906, sec. 5501. (2) But will presume that these public officers acted rightly in the premises and that the adjourned meetings were properly convened. Rutherford v. Hamilton, 97 Mo. 549. (3) The taxbills in evidence made a prima-facie case of their validity, and of the liability of the property to the charges therein stated. This prima-facie case was not overcome. Mo. Ann. Stat. 1906, sec. 5664; Asphalt Paving Co. v. Ullman, 137 Mo. 560; Bank v. Woester, 147 Mo. 467; R. S. 1899, sec. 5221. (4) Every presumption that can fairly be raised in favor of the validity of the taxbills after the work was completed, should be invoked. Johnson v. Duerr, 115 Mo. 366. (5) The charge in the taxbills for "Resetting old Curb" and "Guttering relaid" was proper. This was a part and parcel of the whole scheme of improvement for Messanie street as determined upon by the board of public works and as outlined by the ordinance passed by the city council under which the work was done. Mo. Ann. Stat. 1906, sec. 5508, subd. VIII, XII; Mo. Ann. Stat. 1906, sec. 5661; Elliott on Roads and Streets (2 Ed.), sec. 505, p. 516; Morse v. Westport, 110 Mo. 502; Farrar v. St. Louis, 80 Mo. 379; Morley v. Carpenter, 22 Mo. App. 640. (3) That appellants' property can not be exempted from sharing its portion of the expense

of the improvement by reason of the conditions of the deed from Frederick W. Smith and wife to the city of St. Joseph is well settled by the authorities in this and other states. Vrana v. St. Louis, 164 Mo. 151; State v. Railroad, 75 Mo. 208; Pittsburg v. Oglesby (Ind.), 76 N. E. 165; Leggett v. Detroit (Mich.), 100 N. W. 566; Elliott on Roads and Streets (2 Ed.), sec. 148; Hamilton Law of Special Assessments, sec. 315, p. 256; 2 Smith on Modern Law of Mun. Corp., secs. 1489, 1490; 2 Beach on Pub. Corp., sec. 1443; R. S. 1899, sec. 5524. (5) We earnestly insist that the council meeting at which the ordinance in question was introduced, as well as the meeting at which it was passed were each legal meetings.

JOHNSON, J.—Action on special taxbills belonging to a series issued by the city of St. Joseph in payment of the cost of paving Messanie street from the east line of Tenth street to the west line of Fifteenth street. A jury was waived by consent of the parties, judgment was entered for plaintiffs for the full amount demanded, and defendants appealed.

The bills issued April 13, 1904, are claimed to be invalid on the ground that the meeting of the common council, at which the ordinance providing for the improvement was passed, was not convened in a manner authorized by law. St. Joseph is a city of the second class and, at the time of the passage of the ordinance, was operating under an Act passed by the Legislature p. 68, et seq.). The legislative body of the city was in 1903, relating to cities of that class (Laws of 1903, composed of thirteen councilmen and a president who was not entitled to vote except in case of a tie. The statutes provide (Laws 1903, p. 70): "Such common council shall hold a meeting on the third (3rd) Monday in April in each year and thereafter on the first (1st) Monday of each and every month in the year,

which shall be known as the 'Regular Monthly Meeting,' and the common council may, on motion, by a two-thirds (2-3) vote of all the members elect, adjourn to meet at a date and hour to be named in the motion, and at such adjourned meeting all unfinished business must first be transacted. The mayor may, by proclamation, convene the common council in special session, at which no business shall be transacted except such as may have been especially named in the proclamation of the mayor." And further, that "a majority of the members elect shall constitute a quorum for the transaction of business, but a smaller number may adjourn from time to time and may compel the attendance of the absent members in such manner and under such penalties as it may prescribe." [p. 71.] The Act contains no provision for an adjournment of the council to a day certain in cases where the members present constitute a majority but not two-thirds of the members elect. It appears from the record of the proceedings of the council introduced in evidence by defendants that the council met in regular monthly session on the 3d day of August, 1903, and regularly adjourned from time to time until the 18th of August, when it met pursuant to the preceding adjournment. The record of that meeting is as follows:

"St. Joseph, Mo., Aug. 18, 1903.

"The common council met pursuant to adjournment, there being present Councilmen Andriano, Barkley, Barrett, Crandell, Fullerton, Hicks, Horn, Klos, Reeves, Sack, Thayer—11; absent Councilmen Bruce, Cannon, Imel—3. President Sack in the chair. On motion of Councilman Barkley the reading of the minutes of the last meeting was dispensed with.

"Councilman Crandell was excused by the chair. Councilmen Thayer, Klos, Andriano and Hicks were excused by the chair.

"4899. Because of the lack of a quorum the Council adjourned, on motion of Councilman Fullerton, to Thursday, August 20, 1903, at 10 o'clock a. m."

At the meeting held on August 20th, another adjournment was had to Monday, August 24th, at 8 o'clock p. m. The adjourned meeting held on the last-named date was the one at which the ordinance in question was passed. Counsel for defendants argue that "a valid ordinance can be passed only when the city council is assembled and acting as an organized body at a meeting held according to law," and that the special meeting at which the ordinance was passed was not held according to law for the reason that the motion to adjourn adopted at the intermediate meeting held on August 18th, was not passed in accordance with the requirements of the statute since its object was to adjourn to a day preceding the next regular meeting day and it received only six votes—a less number than two-thirds of the members elect, though the meeting was organized with a quorum present.

In the absence of statutory restrictions, the legislative body of a municipality when lawfully in session with a quorum present has the inherent power to adjourn by majority vote to a future date. [McQuillin on Munic. Ord., section 111; Dillon on Munic. Corp., section 269 (4 Ed.) ; 1 Beach on Public Corp., section 268], but where as in the present case, the time for the holding of regular meetings and the method to be followed for the holding of special meetings are made the subject of express statutory enactment, such regulations must be strictly followed and the failure to comply with them in adjourning to a special time will invalidate the adjourned meeting and its proceedings will be regarded as *coram non-judice* and void. The statutes relating to cities of the second class define the charter powers of the city of St. Joseph. They stand as the embodiment of the constitution and their restrictions command abso-

lute obedience. [Forry v. Ridge, 56 Mo. App. 615.]
We must look to their provisions for the method by
which the common council could adjourn the special
meeting held on August 18th to another special session
and, should we find that such method was not substan-
tially followed in the passage of the motion to ad-
journ, the subsequent special meetings, dependent for
their validity on the regularity of that act, must be pro-
nounced void and the ordinances enacted at them re-
garded as *coram non judice*. When the meeting was
organized, eleven of the fourteen members elect were
present. Under the statute, a majority would constitute
a quorum. Not only was a quorum present, but the
number was sufficient to pass a motion to adjourn to a
special session by a two-thirds vote of the members elect.
But before such motion was offered, five members were
excused by the chair and, presumably, withdrew. This
left the meeting without a majority of the members elect
present and, therefore, without a quorum. We are of
opinion that the minority thus left was authorized to
adjourn to a special day by the statutory provision that
"a smaller number (than a majority) may adjourn from
time to time," etc. We can perceive no good reason for
the distinction attempted to be drawn by counsel for de-
fendants between cases where the meeting is disorgan-
ized by the withdrawal of a sufficient number of mem-
bers to break the quorum and where the required num-
ber to constitute a quorum fails to appear at the meet-
ing. In either event, there being a lack of a quorum,
the statute we have quoted should apply. Counsel ar-
gue that the members withdrew for the express purpose
of breaking the quorum in order that an adjournment
might be made by the minority to a day certain. But
there is nothing in the record before us to indicate such
purpose and, in the absence of a showing to the contrary,
we must presume that the withdrawing members were
excused for good cause and not for the purpose of evad-

ing the restrictions of the statute.  These considerations lead to the conclusion that the motion to adjourn was adopted legally and, therefore, that the special meeting at which the ordinance in question was passed was convened and held in the manner prescribed by law.

For a further defense, defendants rely on the conditions of a certain deed executed and delivered, by the owner of the land against which the bills in controversy were issued, to the city, under which it is claimed that the property was to be exempt from special assessments for the improvement of Messanie street.   It appears that in 1871, Frederick W. Smith, who then owned the land, deeded to the city a strip thirty feet wide for the purpose of widening the street on the express consideration that the city would pave, gutter and curb the street and "keep the same in repair."  It is well-settled law in this State that a municipal corporation has no power to grant exemption from taxes either general or special and a contract which undertakes to do so is void, nor can municipalities discriminate in favor of any property.  The charter of the city of St. Joseph in force at the time it received the deed from Mr. Smith contained no provision authorizing the city to contract for the exemption of any property from special assessments and the grant must be held to have been made by the grantor with full knowledge of the fact that he could not by any contract with the city relieve his  property of its proportional share of future special assessments levied for street improvements.  The opinion in the case of Vrana v. St. Louis, 164 Mo. 146, where the subject is exhaustively treated, decides the question under consideration adversely to the contention of defendants and may be consulted for a full exposition of the principle we are applying.

Objection is made to the inclusion in the taxbills of the cost of the curbs and gutters.  Section 5681, Revised Statutes 1899, provides that "the costs of repairing

. . . curbing or guttering shall, when not done by the owner of the property liable therefor in the first instance, be paid out of the general revenue of the city." It is insisted that in the present instance, the improvement as far as it relates to the curbing and guttering should not be treated as a work of reconstruction but as one of repair. We are of opinion that the ordinance and statement of work, which are the only sources of information afforded by the record, show that the work under consideration was part of a general scheme and plan for the improvement of the street and, therefore, should be classed as reconstruction. The mere fact that the contractor was required to utilize the old curb and gutter stones which were serviceable was not, of itself, sufficient to characterize that part of the improvement as one of repair. If a man should tear down one of the walls of his house and rebuild it, that would be a mere repair made on an old house, but if he should build a new house on the site of the old and use one of the old walls in the new building, nevertheless, he would have a new structure and the old wall would be considered a part of it. [Coskay v. Edwards, —— Mo. App. ——.] So in the case of street improvements where, under a single ordinance, a new pavement is to be laid and the old curbing and guttering must be reset and much of it replaced with other material in order to produce a uniform construction, no good reason can appear for saying that one part of the work, viz., the paving of the roadway should be regarded as a reconstruction and another and just as important part—the curbing and guttering—be treated as repairs. We do not consider the facts before us to be the same in all essential particulars as those before the St. Louis Court of Appeals in the case of Perkinson v. Schnaake, 108 Mo. App. 255. There, the work on the curb was so insignificant that the court held that the curb was not reconstructed (made over). While here, the work appears to have

been of such extent and so essential to the accomplishment of the general plan that clearly it was a practical and we think, legal reconstruction. We may concede that the principle we have indicated as the one to be followed in distinguishing between reconstruction and repair differs from that which must have guided our sister court in the Perkinson case and still find that the difference we have noted in the facts of the two cases is sufficient to justify the assessment against the abutting property of the cost of the work of curbing and guttering the street, even under the rule applied in the Perkinson case.

The judgment is affirmed. All concur.