C. B. NASH CO. v. CITY OF COUNCIL BLUFFS et al.

(Circuit Court, S. D. Iowa, W. D. October 22, 1909.)

No. 413.

1. MUNICIPAL CORPORATIONS (§ 88*)—PROCEEDINGS OF COUNCIL—ADJOURNED MEETINGS—LEGALITY.

The legality of an adjournment of a meeting of a city council by less than a quorum to a certain time cannot be questioned by the courts, where at the adjourned meeting all members were present and participated in the transaction of business.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 194; Dec. Dig. § 88.*]

2. MUNICIPAL CORPORATIONS (§ 918*)—ISSUE OF BONDS FOR WATERWORKS—SUBMISSION OF QUESTION TO VOTERS—IOWA STATUTE.

Under Code Iowa, § 720, conferring power on cities, when authorized by a vote of the electors, to purchase, establish or erect, maintain, and operate waterworks, a submission to the voters of a city of a proposition to issue bonds to "purchase or build" a system of waterworks was a valid submission, and an affirmative vote confers authority to issue the bonds for either purpose.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1919–1923; Dec. Dig. § 918.*]

3. MUNICIPAL CORPORATIONS (§ 865*)—CONSTITUTIONAL LIMITATION OF INDEBTEDNESS—COMPUTATION OF TAXABLE PROPERTY—IOWA STATUTE.

Const. Iowa, art. 11, § 3, provides that no city shall become indebted in any manner for any purpose to an amount in the aggregate exceeding "five percentum on the value of the taxable property within such corporation, to be ascertained by the last state and county tax lists." Code Iowa, § 1305, provides that all property subject to taxation shall be valued at its actual value, to be entered on the list and assessed at 25 per cent. of such actual value, which assessed value shall be entered in a separate column. *Held*, under the construction placed on such constitutional and statutory provisions by the Supreme Court of the state, which is binding on the federal courts, that the constitutional limit of 5 per cent. on the indebtedness of a city is to be computed on the actual, and not the assessed, value of its taxable property, as shown by such tax list.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1836–1838; Dec. Dig. § 865.*

Constitutional and statutory limitations of municipal indebtedness, see note to City of Helena v. Mills, 36 C. C. A. 6.]

In Equity. Suit by the C. B. Nash Company against the City of Council Bluffs, Thomas Maloney, as Mayor, John Olsen and others, as Aldermen, and L. H. Jensen. Bill dismissed.

This bill in equity, filed January 5, 1909, is to enjoin the defendant city and officers from the execution and delivery of its bonds or other obligations in the amount of $600,000 for the purpose of raising money to buy or construct a system of waterworks. L. H. Jensen is made a defendant, because he is the plaintiff in the district court of Pottawattamie county, Iowa, in a case against the city and its officers, ostensibly for the same purpose that this bill was filed; but the bill herein charges that the state court case is a collusive one.

Lodowick F. Crofoot and Edgar H. Scott, for complainant.
Clem F. Kimball, City Sol., and Charles M. Harl, for respondents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SMITH McPHERSON, District Judge (after stating the facts as above). The complainant is a Nebraska corporation, and a real estate owner and taxpayer of Council Bluffs. Reasons are relied on for enjoining the creation of the proposed indebtedness of $600,000 for the purchase or erection of a system of waterworks. About 30 years ago a franchise was granted to a corporation to build and operate a system of waterworks for 25 years. The charter period expired 2 or 3 years since, from which time until the present the system has been operated by mere sufferance. Many negotiations have taken place, resulting in disagreements. In September, 1908, the city council submitted to the voters the proposition as to issuing the amount of bonds in question to purchase or build a system of waterworks, which was ratified by a vote of the electors. Thereupon this action was brought.

1. The city council has a rule, but which is not covered by statute or ordinance, that the regular meetings of the council shall be held on the evening of the first Monday of every month. The last meeting of the council in August, 1908, was August 24th. The record, as made up at the time, recited many doings of the council, none of which were connected with this matter, and then recited an adjournment, not specifying any time. This record was signed by the mayor and the clerk. The next Monday was the first Monday of September. The record, as made up for that day (Monday, September 7th), showed that the mayor and all eight of the councilmen were present, and that on motion the council adjourned until the next evening (Tuesday). It is conceded that that record was untrue. The mayor was not present, nor were six councilmen. Two of the councilmen were in the building, but not in the council room. These two voted to adjourn until Tuesday evening. Proceedings were adopted at the instance of complainant herein to correct the record of Monday evening and show the truth. Thereupon the council changed the record of August 24th, showing that the council then declared that the next regular meeting should be September 8th (Tuesday), as Monday, the 7th, was a holiday; and the record of September 7th was changed, so as to show that but two councilmen were present, and that those two adjourned the meeting until the next evening. The petition to the council was signed by the requisite number of people and was filed with the clerk on Tuesday in advance of the meeting, that evening, at which the council by resolution sent it to the voters. By reason of these facts, it is claimed that the statute, which requires that such petition shall be considered at the next regular meeting of the council, was not observed, and that the meeting of Tuesday, September 8th, was not a regular meeting.

As to the right of less than a quorum of a body to adjourn to a certain time, in the absence of a constitutional or statutory provision allowing it, the authorities are in conflict. Cases holding that less than a quorum can so adjourn are: O'Neil v. Tyler, 3 N. D. 47, 53 N. W. 434; Kimball v. Marshall, 44 N. H. 465. And see Abbott, Municipal Corporations, 507. To the contrary, see Penn. Co. v. Cole (C. C.) 132 Fed. 668; Rackliffe v. Duncan, 130 Mo. App. 695, 108 S. W. 1111; Raisch v. Railroad, 7 Cal. App. 667, 95 Pac. 663; State ex rel. Page

v. Smith, 48 Vt. 266. And the case of Moore v. Perry, 119 Iowa, 423, 93 N. W. 510 presents the question without a decision. But it seems to me that an adjournment by less than a quorum, ratified by the actual presence of all members at the time to which such adjournment was attempted, and the transaction of business, is not to be questioned by the courts. But, aside from this, it will be kept in mind that the corrected record shows that by a unanimous vote the council on August 24th adjourned until September 8th for the next regular meeting, thereby in effect suspending or abrogating the rule for a Monday, September 7th, meeting.

2. It is contended that the proceedings on which the bonds will be based are invalid, for that the question submitted to the voters was in the alternative—to purchase "or" build a system of waterworks. The evidence shows that there was a sentiment both in the council room and with many people for municipal ownership of the waterworks. There was an outcry against corporations in general, and a waterworks corporation in particular. Members of the council of various vocations and experiences believed that it would be satisfactory if they could expend this large sum of money and operate the system, and they were indorsed by the voters. It was a question of municipal or private ownership. That was in fact, the question, and municipal ownership won out.

The statute provides (Code Iowa, § 720) that cities shall have power to: (1) Purchase. (2) Establish. (3) Erect. (4) Maintain and operate. There is now in operation a system of waterworks. It can be purchased by agreement, or taken under right of eminent domain; that is, by purchase. Brown v. Carl, 111 Iowa, 608, 82 N. W. 1033, is cited as an authority that the proposition voted on must be either for a purchase or construction, and for the one only. But it is not an authority on that proposition. The practical question submitted was as to whether there should or should not be a system owned by the city. And the opinion by Judge Waterman not only shows what the court in fact held, but the reasons therefor, because he said that, if submitted in the language of the statute, it would be valid. And I am inclined to believe, but with doubt, that the contract for purchase, or the contract to erect, as may be adopted by the council, must be ratified by the voters. Code Supp. Iowa, 1907, § 745.

3. The question as to whether the assessment rolls of 1907, or 1908, or a later year, shall be adopted as the basis, in view of my holdings, is an academic question, and not a practical question, and I do not discuss it.

4. One provision of the Iowa Constitution (article 11, § 3) provides that no city shall be allowed to become indebted in any manner, for any purpose, to an amount in the aggregate exceeding 5 per centum on the value of the taxable property within the city, to be ascertained by the last state and county tax list previous to incurring such indebtedness. Any statute or ordinance or other action of a city in conflict with the Constitution, as of course, cannot stand. And it is idle to talk about what majority some scheme has received, because majorities cannot ride down the Constitution. This provision of the

Constitution was adopted for the sole purpose of thwarting majorities, and giving protection to a minority. If every voter in Council Bluffs wants, and votes for, municipal ownership, they can only have it within the Constitution.

The craze to go in debt, with the stock argument for the next generation to help pay the debts, as if they will not have enough of their own creation, is and has been ever present. Seldom is any scheme to be followed by a debt for any purpose voted down. The convention of 1857 knew this. Counties and cities in Eastern Iowa had then gone in debt in extravagantly large amounts for different things, for the supposed public good. Those schemes were supported by the same zeal and enthusiasm as are the schemes of paternalism of the present day. Music, and banners, and processions, and sidewalk oratory, were known and practiced then, as well as at the present day. Debts created by Eastern Iowa counties and cities, before the adoption of the Constitution more than 50 years ago, are still being paid by the future generations—the present taxpayers of many Eastern Iowa counties and cities. These were the evils that the Constitution was to strike down, if the proposed debts, all told, exceed 5 per cent. But, if within the Constitution, the people by a majority can and should rule, and this whether they act wisely or unwisely. So that it must be determined what the Constitution does provide, and to do this a few elementary and fundamental rules must be kept in mind.

All provisions of a Constitution are mandatory. There is no such thing as a directory provision in a Constitution. All paragraphs, all sections, and all words must be given full force and meaning. With these things in mind, the provision must be analyzed. When that is done, we shall see that the debts heretofore created, added to the now proposed debt, shall not exceed 5 per cent. of the property, because the Constitution provides that a city shall not in any manner or for any purpose go in debt beyond that limit. But 5 per cent. of what? And how is the 5 per cent. ascertained? The first question, of 5 per cent. of what, is answered by the wording of the Constitution, which recites: "Five per centum on the value of the taxable property within such corporation [city]." The words "value of the taxable property" of the taxpayers are what are used. It is known that exemptions from taxation are made, such as courthouses, poor farms, church property, hospitals, homesteads of soldiers, etc. Such property is not to be considered, because taxable property only is to be taken into account. Of such taxable property, 5 per centum is to be ascertained. But what amount? The Constitution says: "Five per centum on the value of the taxable property." So that it seems clear to me that we must take 5 per centum on the value of all the property to be taxed within the city.

But how ascertained is the more difficult; that is, how are we to arrive at the value of the taxable property? Values of property for this purpose cannot be ascertained by the courts hearing evidence. One witness will say that a house and lot are worth $5,000, and one witness a larger, and another witness a smaller, sum. We find that the Constitution requires that such valuation shall "be ascertained

by the last state and county tax lists." The tax list in the first instance is made by the township or city assessor. His valuation, as noted by him and returned to the county auditor, is binding, final, and conclusive, subject only to what may be called appellate proceedings by the board of review (the city council), subject, further, to the county board, equalizing as between precincts, and the state board, as between counties. But the assessor's notations in the end, modified or not modified, go into the hands of the auditor. His work is clerical only. He takes the figures thus returned, and multiplies them by the tax levies, and his figures are certified to the treasurer for collection. Practically ever since we have been a state, the law has required assessments to be made at the actual value of the property. But selfishness and greed to avoid taxation by individuals, and by assessors and boards of review to assist neighbors and political friends, has resulted in a valuation of from 30 or 40 per cent. of the true value. The result has been the same as if a true valuation had been ascertained, because the levy as a multiplier was increased as the valuation was reduced. But this evil, real or supposed, was sought to be remedied by the Legislature by enacting a statute presently to be noticed.

The value of the property of the taxpayers on which the 5 per centum computation is to be "ascertained by the last state and county tax list." What is the tax list as defined by the Constitution? Section 1305 of the Code is as follows:

"Valuation.—All property subject to taxation shall be valued at its actual value, which shall be entered opposite each item, and shall be assessed at twenty-five per cent. of such actual value. Such assessed value shall be entered in a separate column opposite each item, and is to be taken and considered as the taxable value at which it shall be listed and upon which the levy shall be made. Actual value of property as used in this chapter shall mean its value in the market in the ordinary course of trade."

Herein is the pivotal question in the case. And the statement thereof, first of all, presents the inquiry whether this statute has been construed by the Supreme Court of the state, and whether such construction has been held to be valid or void, under the provision of the Iowa Constitution limiting the indebtedness of a city to 5 per centum.

The construction given state statutes and state Constitutions by the highest court of a state will ordinarily be followed by United States courts. Particularly is this so when the facts and transactions of the case have arisen since the decision of the state Supreme Court was made. Therefore, waiving my own views, and properly putting all arguments to one side, it is only necessary to call attention to what the state Supreme Court has decided, if such construction has been given with an affirmative holding upholding similar municipal action.

With this in mind, and observing this rule, in my opinion the question is put at rest by the case of Halsey v. City of Belle Plaine, 128 Iowa, 467, 104 N. W. 494, decided in the year 1905, three years prior to any action taken in the matter under consideration by the city of Council Bluffs. I cannot understand how any one can be in doubt as to what was decided, after reading the opinion as officially reported, as above cited. But in the argument it was stoutly denied that the

opinion was decisive. I have therefore given the opinion and the record in the case the attention which they are entitled to receive.

The confusion in the case arises from the figures found in the different reports of the case. The actual value of all property within the city of Belle Plaine upon which taxes could be laid was $1,578,576. Five per cent. of that in round numbers is $75,000. The question in the case was as to a proposed bond issue of $30,000. How much was the city already in debt, aside from the proposed issue of $30,000? The report of the case in 104 N. W. 495 recites $8,000. The report of the case in 128 Iowa, 467, recites $80,000. I have inspected the original opinion and the files and records of the case in the office of the clerk of the Iowa Supreme Court. I find that the opinion is in typewriting, and as it left the type machine it recited $8,000. But as it now appears a cipher ("0") has been added with pen and ink, so that it reads $80,000. The official files show that the case was heard and determined on an agreed statement of facts, without other testimony, and by which it appears that for the year in question the following were the facts:

| | |
|---|---:|
| The value of the property of taxpayers was | $1,578,576 00 |
| The assessed or taxable value was | 379,629 00 |
| The indebtedness was | 8,000 00 |
| The proposed indebtedness, the subject of the litigation, was | 30,000 00 |
| Total indebtedness, if this last issue was made | 38,000 00 |

From which the following are deduced: Five per cent. of the taxable value is $18,981.45. This is much less than the proposed bond issue. But 5 per cent. of the actual value is $78,928.50. I have gone into these details to show what was decided by the Iowa Supreme Court, and beyond all doubt that court decided that the actual value, as shown by the 100 per cent. column, is the test as viewed by that court. This is so for the following reasons: (1) The opinion is on that theory only. (2) The Iowa Supreme Court declines to follow the case of Chicago v. Fishburn, 189 Ill. 367, 59 N. E. 791, which holds squarely the reverse. (3) The issue of bonds for $30,000 was held to be valid. They would have been absolutely void by any computation, other than by taking the prior indebtedness at $8,000, and not $80,000, and by taking the actual, instead of the taxable, value of the property subject to taxation.

Such was the judgment of the Iowa Supreme Court in the year 1905, and a judgment of a court always prevails as against the opinion or reasons assigned for the judgment. And there can be no doubt that the change of figures in the opinion was by inadvertence, and quite likely by Judge Bishop, since deceased. I have gone into these details because of the very great importance of the matter. And the Iowa Supreme Court having passed upon the question, and thus construed the Iowa Constitution and the Iowa statutes, prior to the time when the city of Council Bluffs took any step towards creating the proposed indebtedness, the question as to this court is foreclosed.

It is beyond all doubt true, under this Iowa Supreme Court decision in the Halsey Case, that cities can now become indebted from three to four times as much as they could five years ago. It may be

that it will open a new era, like the old one, sought by the constitutional convention of 1857 to be relegated to history. It may be, as argued, that we will have the bond issues as we did 60 years ago, followed by unbearable burdens of taxation, or even bankruptcy and repudiation. I do not say we will, and cannot say we will not, have such things. All these are matters of policy, with which this court has no power to interfere. This court can only deal with questions of the power of the city. And the Iowa Supreme Court having so decided prior to the year 1908 (in 1905), and that opinion being the latest expression of that court upon the question, this court, by reason of a long, unbroken line of authorities, must give the same construction to the Iowa statutes and the Iowa Constitution. And as section 1, c. 49, p. 33, Acts of the Thirty-First General Assembly, authorized the 5 per cent. debt to purchase or construct waterworks, the city is within both the statute and the Constitution.

Therefore, as in any view, under the evidence, as to the existing indebtedness of the city, an additional indebtedness of $600,000 will not exceed the constitutional limit, the bill of complaint herein is dismissed.