CITY OF MOBERLY v. DENNIS HOGAN, Appellant.—298 S. W. 237.

Division One, September 16, 1927.

1. **EMINENT DOMAIN: Surrender by City: Contract.** The exercise of the right of eminent domain cannot be contracted away. It is a power which cannot be surrendered, and any agreement by a city that its power to condemn land for a public street will not be exercised, or that it will never take other lands of the other party to the contract for a public purpose, is null and void. The subject-matter is not one with which the city may deal by contract.

2. ———: **Estoppel: Contract with City: Compensation.** The power of the city to condemn land for street purposes is not destroyed by a deed and contract whereby the owner of land conveyed to the city an eighty-foot strip to be used as a street upon condition that no more of his land was ever to be taken for such street. Nor is the city, so long as it retains said eighty-foot strip and other benefits derived from a consummation of said contract, estopped from repudiating the contract and condemning other adjoining portions of the owner's land, until it pays for the eighty-foot strip thus conveyed to it in consideration of its agreement to take no more of his land; nor can the owner, in the city's suit to condemn more of his land in widening and straightening the street, recover damages or be allowed compensation for the land theretofore conveyed by him to the city, and held, and intended to be held, contrary to the provision in the deed and contract that the city would take by condemnation no more of his land.

3. ———: **Easement: Contract.** An agreement by the city to condemn no more of the owner's land, in consideration of his deed conveying to the city an eighty-foot strip for city purposes, is a nullity **ab initio**, and constitutes no easement to the owner's land subsequently sought to be condemned, and therefore the owner cannot, in the condemnation proceeding, recover compensation or damages for the eighty-foot strip on the theory that the contract constituted an easement annexed to or connected with the land sought to be taken.

4. ———: ———: **Settlement of Damages in Former Condemnation.** In a former suit brought by the city to condemn a street through forty-two acres of land, eighty feet wide and 1300 feet long, commissioners were appointed and damages assessed. It was then agreed that the proceeding should be abandoned, and in lieu of the damages and in lieu of taking said eighty-foot strip, that the owner would convey to the city an avenue across his tract, without monetary consideration, and that the city would construct a fence on each side of the avenue and would not thereafter condemn any more of the tract for the purposes of straightening the avenue. Afterwards the city brought this suit to condemn a triangular strip at a turn in the avenue for the purposes of straightening and widening it. **Held,** that the owner of the tract, who is the defendant, cannot in this proceeding recover either damages or compensation for the avenue previously conveyed by him to the city, nor is the city estopped by the conveyance and agreement from condemning the triangle; and what remedy the defendant may have in a different action for a violation of the agreement, is not decided.

Corpus Juris-Cyc. References: **Eminent Domain,** 20 C. J., Section 4, p. 516, n. 21; Section 33, p. 545, n. 22; Section 300, p. 874, n. 94.

Appeal from Randolph Circuit Court.—*Hon. Allen W. Walker,* Judge.

Affirmed.

*Frank Lofty* and *Jerry M. Jeffries* for appellant.

Courts will require common honesty and fair dealings by municipal corporations, as well as by individuals. Where a municipal corporation by contract takes land for street purposes, the consideration being future obligations of the city, the contract is void because *ultra vires.* However, common honesty being required, the municipality cannot repudiate the agreement unless it returns or offers to return the land so taken under that contract. The city cannot hold to the land acquired under the agreement and at the same time repudiate its obligations. Sparks v. Jasper County, 213 Mo. 236; Chapman v. County of Douglass, 107 U. S. 357.

*Hulen & Walden* for respondent.

(1) The court did not err in sustaining the motion of plaintiff to strike out part of defendant's answer, nor in refusing the evidence offered by the defendant, nor in holding that the city was not estopped from condemning other land belonging to Hogan for street purposes. (a) The clause in the deed for the land for Parks Avenue from Hogan, which said "no more ground to be taken from said Hogan for said street," upon which appellant based his defense in this case, was *ultra vires* and void and of no binding force and effect upon the city. 28 Cyc. 279, 280, 636; Grand Rapids v. Railroad Co., 66 Mich. 42; 3 McQuillan, Municipal Corps., p. 2579, sec. 1169; 4 McQuillan, Municipal Corps., sec. 1457; Vrana v. City of St. Louis, 164 Mo. 146; Miners' Bank v. Clark, 158 S. W. 600. (b) No estoppel can arise against a municipal corporation out of this alleged contract which is *ultra vires,* because it was wholly outside the powers of the municipal corporation to enter into any such agreement. There is a distinction between contracts which are voidable, because of a defective exercise of the power granted, and those where the attempted contract was wholly beyond the power of the municipal corporation. Seaman v. Levee District, 219 Mo. 1, 7 A. L. R. 1249; State ex rel. Underground Service Co. v. Murphy, 134 Mo. 548. (c) The rule is that the party who is compelled to rely upon an invalid contract for relief will receive no aid from the courts; a void contract cannot be made valid by estoppel. Ward v. Hartly, 178 Mo. 135. (2) The court did not err in refusing to instruct the commissioners to allow damages for the taking of the west 1000 feet of Parks Avenue

and the triangular strip of ground at the west end of and ·on the north side of Reed Street, for the reasons stated above. (3) It appearing from the admissions in appellant's brief that there were considerations for the deed to the land used for Parks Avenue other than the clause that "no other land will be taken from Hogan for said street," it follows that the deed is valid and consequently appellant could have no ground to ask that said land be tendered back as a condition precedent to the maintaining of the present suit by the city. 13 C. J. sec. 445, p. 502.

LINDSAY, C.—This is a condemnation proceeding by the city of Moberly to condemn a strip of land of defendant, under an ordinance which recited that the condemnation and appropriation of said land was for an extension of West Reed Street, in said city, so that the extension would intersect Parks Avenue. The intersection is at an acute angle. The defendant owns, and since the year 1908, or earlier, has owned a tract of forty-two and one-half acres within the limits of said city. Reed Street runs east and west, and its west end runs to the east line of defendant's said tract, striking the east line at a point approximately 300 feet south of the north line of defendant's tract. Before describing the piece of ground sought to be condemned in this proceeding, and before statement of the issues made, it seems advisable to relate certain acts of the parties, antedating the institution of this proceeding.

It appears that in 1908 the city desired to extend West Reed Street across defendant's land, or at least, to secure a highway over his land, and an agreement was reached between the city and the defendant. The agreement was one whereby the defendant agreed to convey, and he did convey, to the city, a strip of land eighty feet in width across his land for a highway or street, to be known as Parks Avenue, and in addition to said eighty-foot strip, and by the same deed, he conveyed to the city a small triangular piece of ground south of the south line of said eighty-foot strip and in the angle between the south line of the eighty-foot strip and the east line of defendant's land, so that the east, or north-and-south line of this triangle, coincided with the east line of defendant's land. The east end of the eighty-foot strip was not directly opposite the west end of Reed Street. Said triangular piece did not extend to the full width of West Reed Street. The south line of the eighty-foot strip began at a point twenty-one feet north of the point where the north line of West Reed Street reaches defendant's east line. The eighty-foot strip did not run due west across defendant's land, but ran south eighty-four degrees and fifteen minutes west until it reached defendant's west line, a distance of about 1300 feet. The triangular piece then also conveyed by defendant to the city, began at a point on defendant's east line, twenty feet south of the north line of West Reed Street, ran thence due northwest to an intersection

with the south line of the eighty-foot strip, and thence along the south line of the eighty-foot strip eastward, back to defendant's east line, thence south (forty-one feet) to the beginning. Thus, the triangular piece conveyed, its east side extending as it did twenty feet south beyond the north line of West Reed Street, furnished an entrance or gateway twenty feet in width from the north part of West Reed Street, for passage on to the triangular strip and thence on to the eighty-foot strip.

By the proceeding here under consideration the city undertook to condemn so much of defendant's land as would afford an outlet eighty feet in width from the west line of West Reed Street on to and over the eighty-foot strip. The strip thus desired, included the triangular piece conveyed in 1908, and something more. Excepting therefrom the triangular piece conveyed by defendant's deed in 1908, the city sought to condemn a piece of land in the form of a triangle whose base, or east line, was 101 feet in length from north to south, and coincident with defendant's east line, and thus extended from the south line of the eighty-foot strip, to the south line of West Reed Street. The north and south boundary lines of this triangle converge to a point, approximately 600 feet westward in and upon the line of the eighty-foot strip.

In his answer to the city's petition, the defendant, after admitting that he was the owner of the land described in the petition, and denial of all other allegations, for his further answer, pleaded, that prior to May 14, 1908, it was agreed that defendant should convey to the city the tract of ground for the establishment of a public street, to be known as Parks Avenue, the same to begin near the west end of West Reed Street, and to extend west through his said tract of ground; that the city agreed that for said conveyance it would accept said strip of ground—establish said Parks Avenue—open the same, and keep and maintain the same as a public street, and would at no time in the future acquire, take or demand any other part of defendant's said tract of ground for said street; that on May 14, 1908, defendant executed and delivered to plaintiff his deed to said strip eighty feet wide across his land, and also to the triangular strip, which has been first referred to and described by us. Defendant further averred that the city had accepted said deed, and placed the same of record; had taken possession of said strip of ground, made the same into a street, called the same Parks Avenue, and had ever since held the same; that the only consideration received by him for his said conveyance was the covenant and agreement of the city that it would not take any more of defendant's ground for said street, Parks Avenue. He further alleged that the city, in this proceeding, was fraudulently and unlawfully seeking to add to and widen Parks Avenue by taking more ground from plaintiff's said tract, and adding the same thereto, contrary to said agreement; that plaintiff's real purpose was not

to extend Reed Street, but to widen and add to said Parks Avenue, in contravention of the agreement aforesaid; that the strip of ground sought to be condemned was in such shape that it could not be used for public purposes or otherwise, unless used in conjunction with the said Parks Avenue; and plaintiff pleaded the aforesaid agreement and the acceptance and use of said strip of ground by the city as a bar to plaintiff's action; and pleaded that by said acts and things, the city was estopped from prosecuting the proceeding.

Upon motion of the city, the court struck out all of defendant's answer constituting his special defense and plea of estoppel. The court thereafter proceeded to the appointment of commissioners to assess damages, and the commissioners made their report in which they allowed defendant the sum of $600 as his damages. Upon the hearing the defendant offered to make proof of the aforesaid agreement and of the consideration therefor, and the conveyance by defendant of the land described in said deed, all of which, upon objection of the plaintiff, was excluded. The record shows that defendant offered to prove that the agreement above mentioned was made effectual on the part of the city by an ordinance duly enacted. Tender in evidence was made of said ordinance and deed, and the evidence offered was rejected. The ordinance is not set out in the record. The deed, set out in full, recites that it was made in consideration of the sum of one dollar paid by the city. Said deed, after its description of the land constituting the eighty-foot strip, and the triangular piece for the purpose of a public highway, further continues: "Said street shall be opened by said city and put in passable condition for travel by the general public for vehicles of all kinds, within ninety days (weather permitting) after the completion of the extension of the West Reed Street sewer, to the winding ways. Said city shall fence said street on either side thereof, and maintain same until such time as the adjacent land is laid off into lots and blocks, said street and highway to be forever known as Parks Avenue and no more ground to be taken from said Hogan for said street." The defendant in his answer also alleged that his said tract of land had not been laid out in lots or blocks.

The defendant asked the court to instruct the commissioners appointed to assess damages, that in assessing damages they must allow damages to compensate the defendant for the taking and use of the whole of Parks Avenue, as well as the strip sought to be condemned. The court refused to do so. The defendant is not complaining of the amount allowed, $600, as compensation for the land actually taken in this proceeding. The amount of it is less than three-fourths of an acre.

Errors are assigned, in the striking out of the special defense pleaded in the answer, in refusal to admit the deed in evidence, and in refusing to instruct the jury to allow damages for the land con-

veyed under the deed. But, the assignment containing in a general way the whole of defendant's claim, is, that error was committed in ruling that the city could repudiate the contract pleaded in the answer, and expressed in the deed of defendant, without restoring the ·consideration it had received therefor. Thus, the essence of defendant's claim is, that he must be allowed compensatory damages for the continued holding by the city of the property which defendant conveyed to the city, upon the agreement or condition that the city would not thereafter take any more of his property.

Clearly the contract set up by the defendant meant that the city would not thereafter exercise the power of eminent domain in respect to defendant's land. The authorities seem to be in accord in the rule that the exercise of the right of eminent domain is a power which cannot be contracted away. [Lewis, Eminent Domain (3 Ed.) sec. 406.] It is a power which cannot be surrendered. [20 C. J. 516.] "A municipal corporation cannot surrender or preclude itself from the exercise of the power of eminent domain; and any agreement by a municipality that the power of eminent domain shall not be exercised in any particular manner or in respect to certain property is null and void." [4 McQuillan, Municipal Corp., sec. 1457.] The like rule or principle has been applied, in respect to surrender by the city of its police power, to exercise of the power of taxation. It has been uniformly held in this State that where land was donated to a city for street purposes upon a condition, and accepted upon the condition, that the donor should not be liable for special taxes for the improvement of the street, such condition and the acceptance of said streets, does not affect the power of the city to improve such streets, under its general power in that regard, and to assess the cost, and issue valid tax bills against the property of the donor. [Vrana v. City of St. Louis, 164 Mo. 146; Miners' Bank v. Clark, 158 S. W. 597; Rockliffe v. Duncan, 130 Mo. App. 695.] We think it is very clear that the power of the city to condemn the land in question was not destroyed by the terms included in the deed and agreement between defendant and the city. Counsel for defendant say they do not contend the city is absolutely estopped by the contract, but contend that so long as the city retains all the benefits of the contract it is estopped from repudiating the same in the manner it is seeking to do in this proceeding. The question thus raised is, whether defendant, being subject to the exercise of the city's right to condemn the land involved in this proceeding, can recover, or be allowed in this proceeding compensation for the land theretofore conveyed by the defendant, to the city, held, and intended to be held, contrary to the provision in said deed that the city would take (by condemnation) no more of defendant's land.

Counsel for defendant rely mainly upon the decision of this court in Sparks v. Jasper County, 213 Mo. 218. The sum of the conten-

tion is that the city cannot hold the land acquired under the agreement, and at the same time repudiate its obligation; that this is contrary to fair dealing and in that respect a municipal corporation is bound by the same rule as an individual. In the Sparks case the plaintiff sued the county for balances claimed to be due for the construction of several bridges. The county set up in its answer certain counterclaims and set-offs, for money paid to the plaintiff for bridges constructed by the plaintiff in former years, under various contracts which the county alleged were illegally let to the plaintiff. The ruling made there was upon the principle that there had been a complete performance of the contracts on both sides; that they were fair and reasonable in fact, and therefore, there could be no recovery of the consideration by the county, when it retained, and could not, or would not, restore the property, acquired by the contract, even though the contract might be one which the law denounced as illegal, and which could not be enforced on that account. It appears in that case the letting of the contracts for the construction of the bridges, was not had under the conditions and with the formalities prescribed by law. But, the subject-matter of the contracts was such as was within the contractual power of the county. The county could lawfully obligate itself to pay money for the building of a bridge. The weakness was in the manner in which the county attempted to make the contract. Its power to make the contract was made dependent upon observances of certain preliminary acts prescribed by the law. In that particular the case is to be distinguished from that portion of the contract involved in the instant case—the agreement that no more land of defendant should be taken for Parks Avenue, an agreement which the city was without power to make at all.

Counsel for defendant have also cited Chapman v. County of Douglas, 107 U. S. 1. c. 357. The case of Cole County v. Central Missouri Trust Co., 302 Mo. 222, cites the Sparks case and other later cases. The cases mentioned do not present the real question at issue in the case at bar, and, the question is whether what was said is applicable here. There were two classes of conditions in the deed made by the defendant; one, requiring affirmative action by the city, the other undertaking to negative certain action by the city. The city was to open the street, and make it passable for vehicles of all kinds within a certain time, and was to fence the street on both sides, and maintain the fences until the adjacent land was laid out in lots and blocks. It is conceded that the city has complied with those conditions, and it seems undisputed that the adjacent land has not yet been laid off into lots and blocks. Negatively, the city was to take no more ground of defendant for Parks Avenue. Counsel for defendant in their brief say: "Where a municipal corporation by contract takes land for street purposes, the consideration being future obligations of the city, the contract is void because *ultra vires.*" The city, in so

far as concerns the affirmative agreements made by it, has made full performance of the obligation imposed upon it by the deed. The other attempted obligation was a nullity by its very nature, and not by a defective making.

A case presenting in some measure the questions involved here, is Pennsylvania Hospital v. City of Philadelphia, 254 Pa. St. 392. The Legislature in 1854 enacted that no streets, roads or alleys should ever be opened through the property belonging to the Hospital, without the consent of the said corporation, so long as it was used for the purposes of their insane department, with a proviso, however, that the corporation should contribute one-half the ground for certain avenues on their east and on their west lines. The Hospital complied with the condition. Afterward, the city of Philadelphia undertook, by condemnation proceedings, to open a street over land of the hospital. The suit was one which sought to restrain the city from opening said street. The bill was dismissed, and the judgment affirmed on appeal. The court seems to have placed its ruling upon the ground that the State could take every species of property—could take the contract itself—and that the taking (of the contract) was not an impairment of its obligation, because the State made compensation therefor to the party from whom its enjoyment was taken.

The decision seems to be founded upon the theory that the exercise of the power of eminent domain, while it could not be contracted away, yet did not challenge the validity, nor impair the obligation, of the contract; that both were recognized, for it was appropriated as an existing enforceable contract, and compensation made therefor. The Pennsylvania court expressed its ruling by quotation from the opinion in Cincinnati v. Nashville Railroad, 223 U. S. 1. c. 400, and the cases there cited, most of which involved the taking of some form of franchise, by condemnation or other proceeding like in effect. The case went to the Supreme Court of the United States upon writ of error. [245 U. S. 20.] Speaking of the nature of the proceedings in the State court, it was said, 1. c. 22:

"As the result of proceedings in the State court the purpose of the city was so shaped as to cause it to seek to take under the right of eminent domain not only the land desired for the State, but the rights under the contract of 1854." In further reference to the proceeding taken and the question at issue, the Supreme Court said, 1. c. 22, 23, 24: "The conclusions of the court were sustained in a *per curiam* opinion pointing out that there was no question involved of impairing the contract contained in the Act of 1854, since the express purpose of the city was to exert the power of eminent domain, not only as to the land proposed to be taken, but as to the contract itself. The right to do both was upheld on the ground that the power of eminent domain was so inherently governmental in character and so essential for the public welfare that it was not susceptible of being

abridged by agreement, and therefore the action of the city in exerting that power was not repugnant either to the State Constitution or to the contract clause of the Constitution of the United States.

"It is apparent that the fundamental question, therefore, is, did the Constitution of the United States prevent the exertion of the right of eminent domain to provide for the street in question because of the binding effect of the contract previously made excluding the right to open the street through the land without the consent of the hospital? We say this is the question since, if the possibility were to be conceded that power existed to restrain by contract the further exercise by government of its right to exert eminent domain, it would be unthinkable that the existence of such right of contract could be rendered unavailing by directing proceedings in eminent domain against the contract, for this would be a mere evasion of the assumed power. On the other hand, if there can be no right to restrain by contract the power of eminent domain, it must also of necessity follow that any contract by which it was sought to accomplish that result would be inefficacious for want of power. And these considerations bring us to weigh and decide the real and ultimate question, that is, the right to take the property by eminent domain, which embraces within itself, as the part is contained in the whole, any supposed right of contract limiting or restraining that authority. We are of opinion that the conclusions of the court below in so far as they dealt with the contract clause of the Constitution of the United States were clearly not repugnant to such clause. There can be now, in view of the many decisions of this court on the subject, no room for challenging the general proposition that the States cannot by virtue of the contract clause be held to have divested themselves by contract of the right to exert their governmental authority in matters which from their very nature so concern that authority that to restrain its exercise by contract would be a renunciation of power to legislate for the preservation of society or to secure the performance of essential governmental duties. [Beer Company v. Massachusetts, 97 U. S. 25; Stone v. Mississippi, 101 U. S. 814; Butchers' Union Co. v. Crescent City Co., 111 U. S. 746; Douglas v. Kentucky, 168 U. S. 488; Manigault v. Springs, 190 U. S. 473; Texas & New Orleans Railroad Co. v. Miller, 221 U. S. 408.] And it is unnecessary to analyze the decided cases for the purpose of fixing the criteria by which it is to be determined in a given case whether a power exerted is so governmental in character as not to be subject to be restrained by the contract clause, since it is equally true that the previous decisions of this court leave no doubt that the right of government to exercise its power of eminent domain upon just compensation for a public purpose comes within this general doctrine. [Charles River Bridge Co. v. Warren Bridge Co., 11 Pet. 420; West River Bridge Co. v. Dix, 6 How. 507; New Orleans Gas. Co. v. Louisiana Light Co.,

115 U. S. 650; Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685; Offield v. New York, New Haven & Hartford Railroad, 203 U. S. 372; Cincinnati v. L. & N. Railroad, 223 U. S. 390.]

"The principle then upon which the contention under the Constitution rests having been, at the time the case was decided below, conclusively settled to be absolutely devoid of merit, it follows that a dismissal for want of jurisdiction might be directed. [Equitable Life Assurance Society v. Brown, 187 U. S. 314; Consolidated Turnpike Co. v. Norfolk Ry. Co., 288 U. S. 600; Manhattan Life Ins. Co. v. Cohen, 234 U. S. 137.] In view, however, of the course of the proceedings below and the aspect which the case took as resulting from those proceedings, without departing from the rule settled by the cases referred to, we think our decree may well be one, not of dismissal, but of affirmance."

We construe the opinion quoted as meaning that so much of the proceeding as was directed to a condemnation or appropriation of the contract or "supposed right of contract" was an unnecessary act, and an attempted appropriation of a non-existent thing; but, that the allowance or attempted allowance by the State of compensation for the supposed taking, violated no constitutional provision.

The defendant in the instant case relies upon a violation of that provision of the deed which is "inefficacious for want of power," or a mere attempt to exercise a "supposed right of contract." It has been held by this court by a long line of decisions, that proceedings for condemnation of private property for public use, are proceedings *in rem,* and purely statutory. [City of St. Louis v. Koch, 169 Mo. 1. c. 591, and cases there cited.] This proceeding was one to condemn a specific tract of land. Annexed to, or connected with, property sought to be condemned, there may be rights or eastments, directly and specially affected by the taking of the property, and, for the taking or affecting of those rights and easements, compensation must be made. [Peters v. Buckner, 288 Mo. 618.] But, it must be shown "that the property itself, or some right or easement connected therewith, is directly affected, and that it is specially affected." [Peters v. Buckner, 1. c. 637.] The agreement to take no more of defendant's land by condemnation, being a nullity, could not constitute a right or easement annexed to the land of defendant sought to be condemned, whereby he was entitled to compensation for the eighty-foot strip. Whatever right he has is referable to the contract under which he conveyed the strip, which, by the provision relied upon in this proceeding, could attach no right to the land here sought to be condemned, for want of power of the parties to do so. In his offer of evidence, defendant offered to show that, in 1908, it was stipulated and agreed between the city and defendant that at the time there was a condemnation proceeding, instituted by the city against defendant,

in which the city condemned a right-of-way eighty feet wide and 1300 feet long extending Reed Street west through defendant's forty-two and one-half-acre tract of ground; that in said proceeding commissioners were appointed and assessed damages; that it was then agreed between the city and defendant that said proceeding should be abandoned, and in lieu of paying the said damages, and in lieu of taking from defendant said strip of ground, it was agreed between the city and defendant that the defendant should, without monetary consideration, convey to said city a strip of ground across his said tract, the strip so to be conveyed being that which has been heretofore described, being the eighty-foot strip not intersecting or adjoining Reed Street, but accompanied also by conveyance of the triangular strip of ground in the angle. The defendant offered further to show that in making said conveyance the only consideration he received for the same was the covenant in the deed that the city would not thereafter take any more of his said tract for the purposes of extending or widening the street (Parks Avenue) which said deed conveyed to the city. The other conditions to be performed by the city contained in said deed, have been heretofore sufficiently set out. What remedy the defendant may have in another action for a violation of the contract of the city in the particular relied upon, or otherwise, we cannot undertake to decide in this proceeding; but we can see no ground upon which, in this proceeding, the defendant can be allowed compensation, as for the taking of the eighty-foot strip of land not sought to be condemned herein, or damages, as for violation of a contract, not constituting an easement or right annexed to the land here, to be taken.

·The judgment therefore is affirmed. *Seddon, C.,* concurs; *Ellison, C., dubitante.*

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.