KIMBALL *v.* CITY OF JACKSON.

[80 South. 3, Division A.]

1. MUNICIPAL CORPORATIONS. *Street improvements. Assessments. Agreements.*

   Even though it be assumed that a stipulation in a deed to a city that the property conveyed, "is to become a part of Robinson Street and the sidewalk thereof, in said city, and the city obligates and binds itself to maintain the street thereon," is a condition subsequent for the breach of which the owner of the property may be entitled to have the deed cancelled and the property restored to him, it nevertheless does not follow that he is relieved from paying his portion of the expense incurred by the city in maintaining the street.

2. SAME.

   Under the law, when such deed was executed and now, funds with which to pay for the maintenance of the streets of a city can be raised only by taxation or local assessments and such stipulation of the deed must be construed in the light thereof, and when so done, it necessarily follows that the obligation upon the city is simply to maintain the street in the manner in which, under the law, it must maintain all of its streets.

APPEAL from the chancery court of Hinds county. HON. O. B. TAYLOR, Chancellor.

Bill by the City of Jackson against A. N. Kimball, with cross-bill by defendant. From a decree for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Monroe McClurg,* for appellant.

The single assignment of error is that the lower court erred in sustaining the demurrer. The three points in this argument are:

I. The deed on its face, especially in the proper construction and rational application of the words, language, and general frame of the deed means that the city shall bear the expense of paving that part of Robinson Street conveyed to it by the appellant.

II. If there is doubt arising out of the reading of the deed as to such construction and application, the demurrer should have been overruled, the cross-bill answered and the parties remitted to their proofs to aid the court in reaching a proper construction, interpretation and application of the words and phraseology used in the body of the deed to determine its real meaning.

III. The record discloses affirmatively that the demurrer was improperly interposed, being based upon an agreement between counsel as to what the evidence would be, which agreed evidence was in emphatic contradiction of the deed materially varying, altering, and changing its plain purport and meaning; wholly incomplete evidence. These three propositions will be discussed in general run of this brief to save repetition in argument and citations in a separate discussion; the first two inseparably refer to each other; the third proposition is *sui generis;* an agreement as to the control of incompetent evidence and then to demur to the answer and cross-bill.

While the intention of the parties is to be derived first from the language of the instrument, then, if necessary, with the aid of the surroundings of the parties at the time of executing it, not to contradict, but

interpret the language they employed, the whole instrument will be looked to in construing it. If the context shows that a different construction should be placed on certain words to meet the meaning in which they were employed, this will be done. The substance of the conveyance may be found beneath and within the words employed and without doing violence to them by interpreting those words in the light of the deed, and the surrounding circumstances if necessary to resort thereto. *Wilzinski* v. *L. N. O. & T. Ry. Co.*, 66 Miss., 595; *Atkinson* v. *Sinnot*, 67 Miss., 502, 510, "Redeem" technically used construed to mean "reserved". *Thomas* v. *Holmes County*, 67 Miss., 574.

The purpose to make the maintenance of the street in the sense claimed by Kimball a material moving consideration is expressly stated before and after the words of conveyance in both the granting and *habendum* clauses; the latter does not yield to the former clause. "For a valuable consideration and the obligations of the city hereinafter expressed" is to be read: "For a valuable consideration and for the further consideration, distinctly understood that the strip of land hereby conveyed be accepted by the city and become a part of Robinson Street and sidewalk therein, and that the city by accepting this conveyance thereby expressly obligates itself to maintain said strip as a part of said street and pay the expenses thereof, we hereby grant, bargain, sell, and convey (the strip) to said city to hold forever.

"The proper end of all rules of construction is to effect the intention of the parties to the instrument, and this is true of deeds as well as of other writings." *Hart* v. *Gardner*, 74 Miss. 153; *Haddell* v. *De Jet*, 76 Miss. 104.

A statute giving the municipal authorities, as ours does, the "control of the construction, improvement, repair, and cleaning of the streets," is a broad one authorizing the making of new streets, the four terms governing the whole subject, from the making of a new

street to its final and orderly maintenance. And "construction," as used in the phrase in an ordinance requiring an electric railway company to deposit a certain sum of money and forfeit it in case of default in the construction within a fixed time to fully construct, equip, and commence operation, means actual building of the road, putting down rails, ties, planking, grading and paving." The answer discloses great need in grading and its probable injury to the lots.

In 12 Corp. Juris., p. 1300, notes 4 and 5, "Rational" construction; *ibi,* page 1301, note 87; in equity a liberal and extensive construction, as opposed to a literal and strict construction in law; *Ibi,* 1302 and notes.

Equity makes a distinction in all cases between that which is a matter of substance, and that which is a matter of form; if it finds that by insisting on the form the substance will be defeated, it holds it to be inequitable to allow a person to insist on form and thereby defeat the substance. R. C. L., 6, sec. 224. "The best construction is that which is made by viewing the subject of the contract as the mass of mankind would view it; for it may be safely assumed that such was the aspect in which the parties themselves viewed it." Sec. 232. As to the construction placed by the parties, see 241.

In the light of the allegations of the answers and cross-bills, if the court please, as well as of the most unusual and conflicting recitals contained in the body of the deed, conflicts not only in the words used, but in the usual acceptation of the ordinary meaning of those words, and in the legal effect thereof, it is most respectfully submitted and urged that the true legal construction or equitable interpretation and effect of the deed as a whole means what appellant claims it to mean. If not clear on its face, then it is within the doctrine of necessary further inquiry as to the contemplation of the parties to be ascertained by contemporaneous and subsequent conduct, conditions, and any pertinent facts and circumstances as to what was meant, understood

and really agreed to by the use of the words and language found in the deed, especially so of the "maintain" as therein used, or improperly so, as it oftentimes has been, as the law books testify. The rule of construction by aid of such inquiry is indicated also in *Freeman* v. *Wilson,* 51 Miss. 329, as are all of the rules requiring investigation of all the petinent facts to ascertain in justice and right what the parties intended.

The word "maintain" in the sense used in the deed means to hold or keep in any particular state or condition; to support; to sustain; to uphold; to keep up; to keep possession of; not to surrender; to continue; not to suffer to cease or fail; to improve and *to bear the expense thereof,* since to give the word "maintain" its strict meaning would render that clause of the deed meaningless, it being the duty of the municipality to maintain the street in the general ordinary way. In point 5 Words & Phrases, pp. 4277, 78, 80; 25 Cyc. 1664. See *State* v. *Light & T. Co.,* 91 Wash. 519; *Ibi,* 158 Pac. 85,, where "maintain" is sometimes synonymous with "construct" and "bearing the expense of." (This from reference only.) The city cannot collect for the water and sewer connections. *City of Jackson* v. *Hart,* 78 So. 780, June 10, 1918.

There is no purpose to contradict, vary, change or alter the deed, but have it correctly construed according to its real intent and meaning, and construed on its face, it is first respectfully urged, must be in accord with the appellant's view. If not found favorable to that view in testing the question by the face of the deed as a whole, then appellant should be let to his proof.

Reading the deed in conjunction with the historic allegations of the answers and cross-bill, the reasonable deduction appears to be about this: Kimball lived in the hills and hollows and gullies out on the old country road on a lot carved out of the old parental homestead; a street car company had constructed its lines that far along that road, and he desired the extension of

Robinson Street along his front to replace the road for the advantage of convience and the prospective increase, no doubt, in the value of his property. The live, growing, and progressive city, always ready to expand and lengthen and open its thoroughfares, was ready to deal with him and others in his neighborhood along the country road and the car line. So, no matter who bantered the trade, but the answer says that the city proposed it, and no doubt that in making the proposition, the city had its "weather eye" on saving the just compensation and costs of condemnation, including damages for grading, valuable considerations operating on vendor and vendee. Kimball waived his just compensation and grading damages in consideration of getting the old roadway converted into a city-kept and maintained street, and the city retained that just compensation and the cost of condemnation and grade money for a consideration in view of paying out its equivalent in opening and maintaining the street according to the intentions of Kimball, he of course, to have no voice in the manner or methods or amounts of maintaining it, but relieved of the extra expenses by special improvements, not exempted therefrom, but prepaid by him; his *ad valorem* taxes would keep pace with increased property values. Hence, the importance of the substantial consideration "distinctly understood that the city obligates and binds itself to maintain a street thereon." That clause was not inserted for mere form, wholly unnecessary, had it not been meant and intended to be significant and active. The restriction is not only to be fairly inferred from the deed, but is expressedly stated therein. And the court will give force to every word in this deed. *Y. & M. V. R. R. Co.* v. *Traction Co.,* 100 Miss. 281; *Eicholberger* v. *Cooper,* 101 Miss. 250.

The language is clear and unambiguous when "maintain" is read in the sense used and intended in the deed; otherwise it is not. *Plantation Co.* v. *Heading Co.,* 104 Miss. 133.

It is respectfully submitted that equity and even-handed justice not only demand that this cause be inquired into on the facts, unless the court finds on the face of the deed that appellants' construction is correct.

And, it may also be true that pure exemptions to designated taxpayers may not be granted, but no exemption is claimed here. The defense rests upon a substantial consideration in a contract for sale and purchase of real estate for necessary municipal purposes in which the seller reserves a specific right or interest.

Nor is it necessary to cancel the deed of conveyance to do equity between the parties. A court of equity may find and decree in this case that the property, under the terms of its purchase, is not subject to this special particular assessment and lien for paving that part of Robinson Street on which the property abuts. Or, if it appear that a binding contract has not been made, for want of mutual understandings or other reasons, reformation of the deed, a condemnation may be allowed, 13 R. C. L., sec. 714, or other ways that this court may readily find to save the street to the city and do justice to the appellant.

However, since the sole decisive question now is whether the court erred in sustaining the demurrer, rather than to overrule it, it is not necessary to discuss what the final decree upon such hearing shall be, if not now sustaining appellant outright.

It is respectfully submitted that the decree should be reversed and decree for appellant here, or the cause remanded so that the cross-bill may be answered and the parties permitted to make proof of their claims.

*Wm. Hemingway* and *W. E. Morse,* for appellee.

For brevity, the case will be discussed from three points, viz: (1) "Maintain" does not mean to construct; (2) One board cannot bind the actions of another board;

(3) Exemptions from special improvements cannot be made.

If we go back to the Code of 1892 as counsel for appellant would have us do, for the proper interpretation of the controlling statutes, we find in section 2947 the following language, viz: "To exercise full jurisdiction in the matter of streets, sidewalks, and parks; to open and lay out and construct the same; to repair, maintain, pave, sprinkle, adorn and light the same," etc. This shows that the laws of even that time did not construe the word "maintain" to mean the same thing as to "construct," for they are used in the same statute and with different meanings.

In the second series of Word & Phrases, Volume 3, page 210, we find the following definition of the word "maintain:" "The word 'maintain' has been defined as meaning to support that which has already been brought into existence. *Kendrick & Roberts* v. *Warren Bro.*, 72 Atl. 461.

For further definition of the word "maintain" see 25 Cyc., page 1664: "Maintained is defined to mean to hold or keep in a particular state or condition, especially in a state of efficiency; to support; to sustain; not to suffer to decline." *Kouchoff* v. *St. John Lbr. Co.*, 121 Pac. 801. "The power to 'maintain and operate' waterworks and electric light plants is not necessarily incident to or implied in the power to purchase or construct waterworks or electric light plants. The word 'maintain' does not mean to provide or construct, but to keep up and preserve." *State ex rel. City of Chillicothe* v. *Wilder*, 98 S. W. 465, 200 Mo. 97.

It was held in *Carson-Rand Co.* v. *Stern*, 31 S. W. 772, 129 Mo. 381, 32 L. R. A. 420, that "the word maintained means literally to hold by the hand, and in its ordinary use to uphold; to sustain; to keep up; and in pleading, it means to support what has already been brought into existence." *Tri-State Amusement Co.* v. *Forrest Park*

*Highland Co.,* 90 S. W. 1020, 192 Mo. 404; 4 L. R. A. (N. S.) 688; 111 Am. S. Rep. 511, 4 Ann. Cases. 808.

"The word maintain within General Statutes 1902, sec. 388, requiring widows to maintain and keep in repair the property set apart to them as dower, does not mean to provide or construct, but means to keep up, not to suffer to decline; keep in repair, and maintain as used in the statute being synonymous." *Ferguson* v. *Reckford,* 79 Atl. 177, 84 Conn. 202; Ann. Cas. 1912, page 1212.

If appellant contends that he was relying upon the old agreement with the city, in which appellant contends that the city contracted to construct or lay paving in front of his property (this interpretation being solely upon the construction which he places upon the word "maintain"); then when he saw the special assessment as made and published in which the amount of the lien was shown, together with that of other property owners upon this street, surely this was notice to him that the city of Jackson did not place such construction upon the word. If he was dissatisfied with the matter at the time, he had five days within which to appeal, and he does not even contend that he appealed at that time. His day in court has passed for protestation against the special assessment.

The case of *Edwards Hotel and City Railway Co.* v. *City of Jackson,* 51 So. 802, fully settles the propositions of one administration attempting to bind the acts of another municipal administration, and further, as to the right of a municipality to relieve anyone from special improvements.

If we say that the word means all the appellant contends for, yet the last two grounds of demurrer are enough to sustain it. They are enough to decide the case.

SMITH C. J., delivered the opinion of the court.

Appellee exhibited its bill in the court below against appellant, setting forth by proper allegation liability to it by appellant for a portion of the expense incurred by the city in paving a street abutting certain property owned by appellant. Appellant answered this bill, which answer he afterwards amended so as to make it a cross-bill, and to this cross-bill a demurrer was interposed by appellee and sustained by the court, and an appeal granted to this court to settle the principles of the case.

The answer and cross-bill, among other things, sets forth the deed under which appellee holds a part of that part of the street abutting on the property here in question, which contains the following stipulation:

"It is distinctly understood that the strip of land above described and herein conveyed is to be accepted by the city of Jackson, and it is to become a part of Robinson street and the sidewalk thereof in said city, and the city obligates and binds itself to maintain the street thereon."

Appellant's contention is that this paragraph of the deed imposes upon appellee the expense of maintaining the street, and prevents it from imposing any burden therefor on the property conveyed to it by the deed.

The principal ground of appellant's cross-bill seems to be, in the event the stipulation of the deed hereinbefore set forth should be held not to prevent appellee from charging appellant with the expense of paving the street, that appellee, in that event, is entitled to have the deed canceled, and possession of that portion of the street conveyed by it restored to him.

Assuming, for the sake of argument, that the stipulation in the deed that the property conveyed "is to become a part of Robinson street and the sidewalk thereof in said city, and the city obligates and binds itself to maintain the street thereon," is a condition subsequent,

for the breach of which the owner of the property may be entitled to have the deed canceled and the property restored to him, it nevertheless does not follow that he is relieved from paying his portion of the expense incurred by the city in maintaining the street. Under the law when the deed was executed, and now, funds with which to pay for the maintenance of the streets of a city can be raised only by taxation or local assessment, or they can be maintained by the labor thereon of persons liable thereto, and this stipulation of the deed must be construed in the light thereof, and when so done it necessarily follows that the obligation upon the city is simply to maintain the street in the manner in which, under the law, it must maintain all of its streets.

*Affirmed and remanded.*