## City of Mount Sterling v. Judy, et al.

(Decided January 30, 1920.)

### Appeal from Montgomery Circuit Court.

1. Municipal Corporations—Exemptions From Taxation.—A contract, by which a city agrees in consideration of the conveyance of land to it to forever exempt the remainder of the vendor's property within the corporate limits from taxation, is void and unenforcible.

2. Municipal Corporations—Restoration of Property Received Under A Void Contract.—Where a municipal corporation receives property, real or personal, under a contract by which in consideration of the property the city agrees to pay certain specified consideration and it turns out that the contract is void and the city cannot be compelled to fulfill its obligation the party conveying or delivering to it the property may have a restoration of the same if it is within the power of the city to restore it.

3. Municipal Corporations—Party Delivering Property to Under Void Contract Has No Remedy If Property Cannot Be Restored.—Where a municipal corporation receives real or personal property under a void contract and it is not within the power of the city to pay the consideration agreed upon the party conveying the property is without remedy unless it can be restored to him.

JOHN G. WINN and R. A. CHILES for appellant.

JOHN S. JUDY for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Reversing.

Many years ago and prior to 1854 J. A. Crawford, who was the owner of a body of land situated in what was then the town of Mount Sterling, conveyed to the town a portion of his land which the town desired in order that it might convey it to the county of Montgomery as a site for a court house and county buildings, which it did, and the site so conveyed to the county is now and has been for many years occupied by the county as a site for its court house and other public buildings.

In consideration of this conveyance by Crawford the town trustees, as the officers of the now city of Mount Sterling were then styled, adopted a resolution or ordinance setting forth that in consideration of the conveyance by Crawford the other land owned by Crawford within the corporate limits of the town should forever be exempt from municipal taxation. The deed made by

Crawford to the town and by the town to the county as well as the records of the town containing the resolution or ordinance evidencing the acceptance of the conveyance and the exemption from taxation were destroyed by fire years ago, and therefore neither the exact dates of, nor the recitals in the conveyances or in the ordinance or resolution can be obtained, but there is no disagreement between the parties to this suit about the facts as we have stated them.

After the conveyance to the town by Crawford a part of the remainder of the land owned by him and that was situated in the corporate limits of the town when the conveyance to the town was made came by mesne conveyance into the ownership of Mrs. A. H. Judy, and in 1917 the city of Mount Sterling brought this suit against Mrs. Judy to subject to the payment of city taxes the land so conveyed and held by her.

In answer to this suit she set up the facts concerning the conveyances and agreements between Crawford and the town, and relying upon the sufficiency and validity thereof asserted that the land sought to be taxed was exempt from city taxation; also averring that the city as well as the town had theretofore recognized the validity and binding effect of the exemption agreement and had never until this suit was brought sought to subject the land to municipal taxation.

She further averred that in view of the conveyance by the town to the county and the erection of the public buildings on the site conveyed it was impossible for the city to restore the land conveyed by Crawford; and in a counterclaim asked that if the court could not adjudge a restoration of the property conveyed by Crawford to the town that she have judgment against the city for $50,000.00, the reasonable value of the land conveyed by Crawford and now occupied by the public buildings of the county.

When the case came on to be heard the circuit court overruled a demurrer to the answer and counterclaim of Mrs. Judy, presumably upon the ground that as there could not be a restoration of the land the exemption agreement was binding, and thereupon the city declining to plead further its petition was dismissed, and it appeals.

Under the facts as we stated them we may assume that the city can not restore to Mrs. Judy the land or any part

thereof conveyed by the town of Mount Sterling to the county of Montgomery, and therefore the only questions in the case as it comes to us are: was the exemption agreement made between Crawford and the trustees of the town binding on the city, and if it is not is Mrs. Judy entitled to recover on her counterclaim or to any other relief?

Counsel for Mrs. Judy rest their argument in support of the ruling of the lower court on the opinion of this court in the case of Walker v. City of Richmond, 173 Ky. 26, and so it will be necessary to consider with some care that opinion.

In that case it appears that in 1870 the city of Richmond desired to widen a street and in order to do so agreed with one Walker, who was then the owner of the land abutting on the street at the place where it was desired to widen it, that if he would set his fence back a distance of twelve feet and surrender the twelve feet to the city it would never require Walker or subsequent owners of the property then owned by him "to grade, build or maintain a sidewalk along said street and that the city of Richmond would at its own expense grade, build and forever maintain a pavement such as may be necessary or required by the city of Richmond." It further appears that in pursuance of this contract Walker set back his fence twelve feet and relinquished the part cut off from his property to the city; that the city accepted the twelve feet and soon afterwards graded the same for the purpose of putting down a pavement as well as curbing along the entire length of the property and since that time has held possession of the strip of land under and by virtue of the contract with Walker and not otherwise.

In 1916 the city, having constructed a pavement, curbing and gutter in front of the property of the Walkers, who then owned the lots abutting on the strip of land conveyed to the city by their vendor Walker, brought suit against them to recover the cost of the improvements. In answer to this suit the defendants, Walkers, after setting out the facts stated, asked that the petition be dismissed or that the strip of ground conveyed to the city by Walker should be restored to them in its original condition with the privilege of replacing the fence on the line where it stood, before it was moved back, under and by virtue of the agreement.

The lower court sustained a demurrer to the answer and counterclaim of the Walkers and on appeal this court, holding that the agreement between Walker and the city constituted a covenant running with the land, said the vendees of Walker had the same right to rely on it as Walker would have had. The court also recognizing the rule that a city has no power to exempt from taxation property which it is authorized by its charter to tax, further said "that the city of Richmond had no authority to make the contract exempting Walker in the manner claimed" and therefore the contract was *ultra vires.* After so ruling the court in answer to the argument of counsel for Walker "that even if the contract was *ultra vires* upon the part of the city, it cannot be avoided in this case because the contract was fully performed by Joyle Walker and the city of Richmond; and, since the city of Richmond had received the land contracted for, it will not now be permitted to disavow the contract and keep the land," further said that "This ground is well chosen, since it does not follow that because the city was without authority to make the contract it can refuse to carry it out and retain the benefits it acquired thereunder, at the same time. Where the adverse party in the contract has performed his part thereof, and by such performance the corporation has received something of value, some liability exists, though the courts are divided as to its nature; many jurisdictions holding that the liability in such a case is on the contract, others that it rests upon the ground of estoppel. But whatever may be the nature of the liability, a municipality cannot receive the benefits of a transaction and repudiate liability arising out of the same transaction."

And further said: "Consequently, where an *ultra vires* contract is made and performed on one side, the other party will not be permitted to enjoy the benefits received but will be required, in a proper action, to account. And, if the consideration received under an *ultra vires* contract cannot be restored, equity will not relieve a municipal corporation from the contract without providing for the restoration of the property received."

And then said: "If, therefore, the contract alleged should be proved, appellants would be entitled under it to a restoration of the land which their ancestor had conveyed to the city, under and by virtue of the unauthorized contract. To that extent the answer in the first action

presented a defense, and the demurrer thereto should
have been overruled."

It will be observed that the court ruled in that case
that although the contract between the city and Walker
by which the city agreed to exempt his property from
street improvement taxes was *ultra vires* and void the
city could not without restoring the strip of land enforce
its tax claims, apparently assuming that it was within the
power of the city to make the restoration; and if it was in
the power of the city to do this, as from the opinion we
must assume it was, the opinion is undoubtedly sound,
because if a municipal corporation acquires possession of
property, real or personal, under a contract it was not
authorized to make, as for example a contract by which
it agrees in consideration of the property received to ex-
empt the donor or grantor and his vendees from the pay-
ment of municipal taxes, it can not retain the property if
it is susceptible of restoration and refuse to fulfill the
obligations of the contract it assumed. We have so de-
cided in many cases.

In Board of Trustees of Fordsville v. Postell, 121 Ky.
67, the board of trustees issued bonds for the purpose of
buying with the proceeds a school house building and lot.
Subsequently it developed that the board of trustees, hav-
ing no authority to issue the bonds, they were void, and
thereupon the holders of the bonds instituted a suit
against the board of trustees asking that the lot, house
and furniture, which were purchased with the proceeds of
the bonds, be transferred to them, and the lower court
having adjudged the relief sought the school district ap-
pealed. In affirming the judgment this court said:

"While under the Constitution no liability would at-
tach to the district for the money if it had lost it or if it
had spent it and the fund could not be identified and fol-
lowed, where it may be followed and identified, there is
no more reason why property which represents the fund
should not be returned than there would be for not re-
turning the money, if it had been placed in a bag and the
district had the bag locked up in its safe. The purpose
of the Constitution is not to enrich municipalities at the
expense of innocent people who deal with them, and when
they repudiate their bonds they must act honestly. A loss
must not be placed upon the district; but, when justice
may be done without inflicting any loss upon the district,

equity will lay hold of the conscience of the parties and make them do what is just and right.''

In City of Bardwell v. Southern Engine and Boiler Works, 130 Ky. 222, 20 L. R. A. (N. S.) 110, it appeared that the city of Bardwell, without authority so to do, purchased from the Southern Engine and Boiler Works an engine to be used in operating an electric light plant. The company brought suit to recover the purchase price of the engine, and the city in defense of the suit set up that the contract under which it purchased the engine was void and unenforcible. In determining the case the lower court, although holding the contract void, gave the engine and boiler works judgment for the amount of its debt and further adjudged that to secure the payment of same it had a lien on the engine. On appeal the city insisted that as the contract was admittedly void the engine and boiler works was not entitled to any relief, but in answer to this the court in affirming the judgment said:

''There is no difficulty in identifying the property. There are no other liens on it. Nor does it appear that any other property will be seriously injured by the sale of it. True, if the engine should be removed the city might be deprived of the use of its electric light plant until it obtained another engine; but, except in this particular, the removal of the engine will not impair the value of the plant. It would be manifestly unjust and inequitable under the circumstances presented by this record to permit the city to keep this engine and not pay for it. The constitutional provision in question is one of the most valuable clauses in the instrument, and it is not our purpose to in any wise impair its usefulness or deprive the taxpayers and citizens of municipalities of the protection it affords. But it was not designed to enable cities or towns to perpetrate fraud.''

To the same effect are: Marsh v. Fulton County, 10 Wallace, 676, 19 Law Ed. 1040; Chapman v. Douglas County, 107 U. S. 348, 27 Law Ed. 378; Lee v. Board of Com'rs Monroe County, 114 Fed. 744; Boyd County v. Allen, 137 Ky. 575.

Turning now again to the facts of the case we have, if the property conveyed by Crawford could be restored we would have no doubt about the authority of the court to order its restoration, but it is admitted that it cannot be restored and therefore the case we have differs in this

very material respect from the city of Richmond case and the others we have referred to.

Putting aside then, as we must do, the city of Richmond case, as well as the others noticed as not having the controlling weight claimed for them by counsel, the remaining question is: what relief, if any, is a party entitled to who has conveyed or sold to a municipal corporation for its use and benefit real or personal property under a void and unenforcible contract, as this was, when it is not within the power of the municipal corporation to restore the property or pay the consideration under which it was received?

As one effective remedy affording ample relief, counsel for Mrs. Judy press the argument that when, as here, the property received by the municipality cannot be restored the aggrieved party is entitled to have compensation in money, and it is upon this theory that the counterclaim prayed that Mrs. Judy should have judgment against the city of Mount Sterling for the reasonable value of the property conveyed by her remote vendor, towit, $50,000.00. If this was a controversy between a private corporation and Mrs. Judy we have no doubt that the private corporation, if it had received property under an *ultra vires* contract and was so situated that it could not restore the property, it would be required to compensate her in money for its value. It was so held in Albin Company v. Com., 128 Ky. 295, where many authorities are collated supporting the principle.

But this principle, however just and equitable it may be, cannot be invoked against a municipal corporation. If it could be there would be no reason in holding that a municipal corporation, unless it can restore the property, cannot be held liable upon a contract that it had not authority to make, although it may have received the benefits contemplated by the contract. It must be obvious that if a municipal corporation that had received property, labor, services or material under a void contract and one that could not be enforced by the party furnishing the property, services, labor or material, could nevertheless be required to compensate the party for their value in a suit in damages for a breach of the contract, the municipality would be in effect required to perform the contract.

It is further obvious that the announcement of a rule under which such a recovery might be had would be the

merest evasion of the long settled principle that municipalities are not liable on void contracts except to the extent that there may be a restoration of the property received by the municipality under the contract. As a further result from the adoption of such a rule municipalities in all cases in which they had received property, labor, services or material under and by virtue of contracts that were void and unenforcible, would be compelled to fully compensate in damages the party who had furnished the property, labor, services or material. So that in place of bringing suit on the contract he need only bring a suit for damages for the breach.

We are therefore constrained to hold that the counter-claim asserted did not present any defense to the suit for taxes, although in so doing we appreciate the hardship that must be suffered by the party who in good faith sells and delivers or conveys property of any kind to a municipal corporation under an agreement that he will be paid therefor or will receive the stipulated consideration, when he cannot have a restoration of his property or the consideration agreed to be paid. But this hard rule has been applied by this court in many cases equally as meritorious as this although perhaps not presenting the same state of facts. There is, however, no difference in principle between the relief here sought on the counter-claim and the relief sought in many other cases where parties who had performed labor or services for or furnished material to municipal corporations under void contracts have found themselves without any remedy, although the municipality had received and retained the benefits of their labor, services or materials.

Many cases laying down the rule and the reasons for it, that a party who delivers property to or furnishes labor, services or material for the use and benefit of a municipal corporation under a contract it was not authorized to make can not have any enforcible relief except the restoration of the property, might be referred to, but the following we think sufficiently support the principle as we have stated it: Trustees of Belleview v. Hohn, 82 Ky. 1; Floyd County v. Oswego Bridge Co., 143 Ky. 693; City of Newport v. Schoolfield, 142 Ky. 287; Murphy v. City of Louisville, 9 Bush 189; Worrell Mfg. Co. v. City of Ashland, 159 Ky. 656; Montenegro-Riehm Music Co. v. Board of Education, 147 Ky. 720; City of Louisville v. Parsons, 150 Ky. 420; Letcher Fiscal Court v. Spangler,

162 Ky. 314; City of Henderson v. Redman, 185 Ky. 146; City of Henderson v. Winstead, 185 Ky. 693.

Wherefore the judgment is reversed with directions to sustain the demurrer to the answer and for other proceedings not inconsistent with this opinion.