JOHN BANCROFT,

*vs.*

THE MAYOR AND COUNCIL OF WILMINGTON, a Municipal Corporation of the State of Delaware, and ELMER H. KLUND, the Collector of Taxes for the Northern District of the City of Wilmington.

*New Castle, Feb.* 15, 1924.

Generally, a municipal corporation may not bargain away its right to levy and collect taxes generally or to assess for improvement benefits locally.

Where the law defines a plan whereby property benefited by an improvement is to bear its proportionate share of the burden to be ascertained by the calculating of benefits and damages, the particular agency designated by the law to assess such benefits is the only one whose action is binding in that respect.

Where a city purchased for park purposes a tract of land lying within two miles of its corporate limits for one dollar and the further consideration that the city would construct a designated sidewalk and roadway, it could not, after the inclusion of all of such land within its corporate limits, repudiate its contract and require its grantor to help defray the cost incurred by it in performing its covenant, by levying special assessments for the cost of such sidewalk and roadway against adjoining land of the grantor.

INJUNCTION BILL to enjoin the collection of special taxes assessed against the lands of the complainant by virtue of *Chapter* 121, *Volume* 29, *Laws of Delaware*, as amended by *Chapter* 123, *Volume* 30, *Laws of Delaware.*

Heard on bill, answer and agreed statement of facts.

*William S. Hilles*, for the complainant.

*Caleb S. Layton*, City Solicitor, for the defendants.

THE CHANCELLOR.    On September 28, 1889, William P. Bancroft and wife and Samuel Bancroft and wife, being the

owners of a tract of land located in Christiana Hundred, outside the corporate limits of the City of Wilmington, conveyed over five and three-fourths acres thereof to the City of Wilmington for the purpose of a public park. At the time of this conveyance the statute law of the State authorized the City of Wilmington to acquire by gift, devise or purchase lands within the corporate limits or within two miles from the boundary thereof for public park purposes.

In the deed of the Bancrofts to the city the consideration named was one dollar and "the further consideration" that the city would construct along certain designated lines a sidewalk not less than eight feet in width and a roadway not less than thirty feet in width, to which the grantors in the deed, their heirs and assigns, should have free access with the right to use the same subject to such reasonable rules and regulations as might be made by the Park Commissioners of the city, or by any other department or board of the city having from time to time control over park lands. The Bancrofts owned other lands adjoining the tract so conveyed to the city, and in said deed of conveyance covenanted for themselves, their heirs, executors and administrators that they, their heirs and assigns would hold that portion of their land abutting upon said designated lines and to a distance of eighty feet therefrom subject to certain restrictions as to the kind, size, location and cost of buildings to be erected thereon, and as to certain business uses to which the same should not be put. Other restrictions imposed upon the grantors in the deed referred to the matter of fences, and projections to buildings such as porches, windows, etc.

Shortly after the execution and delivery of the deed the city of Wilmington acting through its Board of Park Commissioners proceeded to construct and did construct the sidewalk and adjoining roadway as called for in said deed. The roadway so constructed is the same and the improvements thereon are likewise the same as the roadway and improvements upon which the special assessment and taxes, the collection of which is now sought to be enjoined, are based.

The park in question as well as the lands owned by the complainant have since been incorporated within the limits of the City

of Wilmington.   The complainant is the successor in title to William P. Bancroft, and his lands front along the park.

In 1917 the act was approved under which the assessments and taxes complained against are laid.   That act as amended now appears in *Chapter* 123, *Volume* 30, *Laws of Delaware*, and provides, *inter alia*, as follows:

"Section. 1.   That there is hereby levied and imposed upon property in the City of Wilmington specially benefited by improved paving (said property being hereinafter specified), a special tax of the amount hereinafter specified, said tax to continue as to each property for the life of said improvement, not exceeding, however, ten years in any event, and the entire proceeds thereof shall be used for improving paving in the City of Wilmington.

"*Section* 2.   That for the purpose of this Act all property in the City of Wilmington adjoining or abutting upon any public street which has been paved with improved paving without special assessment or payment of any part of the cost upon abutting or adjoining property owner, by the City of Wilmington, is hereby declared to be specially benefited by such improved paving to an extent greater than the entire amount of the special tax hereby levied thereon."

Following the procedure defined in the act the Board of Directors of the Street and Sewer Department of the city levied and assessed against the complainant special taxes for the years 1918 to 1922, inclusive, acting upon the theory that the complainant as the owner of property abutting on the improved park drive was liable for the special assessment provided for by the act.

The case has been argued upon the assumption on the part of both sides to the controversy that the special tax authorized by the act in question is a tax designed and intended as a method of collecting from abutting property owners their proper share of the cost incurred by the city in the laying of the improved paving referred to by the act.   This agreed point of view is, of course, accepted by the court, and there is therefore no occasion for discussing the consideration upon which it rests.

The complainant has refused to pay the taxes authorized by the act to be assessed on his property because, he contends, the city by reason of the provisions contained in the deed of the Bancrofts to it in 1889 itself agreed to bear the expense of the improvement and exonerated the grantors in said deed and their successors from all charges therefor.

No question is raised regarding the right of the complainant as the successor in title to William P. Bancroft to avail himself as fully of the provisions of the deed as William P. Bancroft himself might do.

Against the contention of the complainant the solicitor for the defendants insists that it was not competent for the city to bargain away its right to levy special assessments against the complainant's property, and if it undertook to do so its act was *ultra vires* and void.

What the city agreed to do was to "construct" a sidewalk and roadway. The deed makes no express mention of how or by whom the cost thereof should be paid. That the city was to bear the cost, however, I have no doubt was the intent of the parties, and the cause has been argued on the assumption by both parties that such was in fact the intent.

The question, therefore, is whether it was within the power of the city to agree to assume the cost of the improvements and to relieve the grantors and their successors from all of the burden thereof. In 2 *Elliott on Roads and Streets*, (*3d Ed.*) § 678, it is said:

"In the absence of legislative authority a city, under ordinary circumstances at least, has no power to make contracts for the exemption or commutation of local assessments."

A municipal corporation has no power to make as a consideration for property conveyed to it for use as a court house an agreement that other land of the grantor should be forever exempt from taxation. *Mt. Sterling v. Judy*, 186 *Ky.* 689, 217 *S. W.* 911. Somewhat analoguous in principle is the case of *Neal v. Decatur*, 142 *Ga.* 205, 82 *S. E.* 546, where it is held that an agreement made by the city that if the defendant would grant a right of way for a sewer, the city would never make any assessments against him for future sewers, was *ultra vires* and of no effect to deprive the city of a right to assess the defendant for another and distinct sewer. These cases and others like them condemn as invalid all attempts on the part of a municipality to bargain away its general power to levy taxes or assess benefits in the interest of that portion of the public whose affairs are committed to its control.

Cases are cited by the defendants which are concerned with

the opening and improvement of streets and in which the proposition decided is that notwithstanding an agreement to the contrary made on behalf of the municipality, property abutting on an improvement is liable for its proper portion of the cost thereof when assessed by that agency of the municipality upon which the duty to assess is imposed by the law. *Gilbert v. New Haven,* 40 *Conn.* 102; *Leggett v. Detroit,* 137 *Mich.* 247, 100 *N. W.* 566; *In re City of Seattle,* 49 *Wash.* 109, 94 *Pac.* 1075, 95 *Pac.* 862; *Vrana, et al., v. City of St. Louis,* 164 *Mo.* 146, 64 *S. W.* 180; *Rackliffe & Gibson v. Duncan,* 130 *Mo. App.* 695, 108 *S. W.* 1110; *Miners' Bank v. Clark,* 252 *Mo.* 20, 158 *S. W.* 597; *Kimball v. City of Jackson,* 118 *Miss.* 789, 80 *South.* 3; *Walker v. City of Richmond,* 173 *Ky.* 26, 189 *S. W.* 1122, *Ann. Cas.* 1918E, 1084; *Pittsburgh, etc., Ry. Co. v. Oglesby, et al.,* 165 *Ind.* 542, 76 *N. E.* 165. As I read the cases above cited, the principle to be extracted from them in addition to the general principle before referred to is, that in cases involving special improvements, where the law defines a plan whereby all property benefited by the improvement is to bear its proportionate share of the burden to be ascertained after a calculation of benefits and damages, the particular agency designated by the law to assess such benefits and damages is the only one whose action can be binding. Consequently if for instance as in the case of *In re Seattle, supra,* the city council assumes to balance benefits against damages and thereby to settle the amount due from a given property, fixing this amount as the consideration for the conveyance to the city by the owner of title to the street bed, when the organic law of the city imposes this duty of balancing benefits against damages upon a jury, the action of the council is void. The principle referred to, while not clearly enunciated in each of the above cases, nevertheless appears to me to be deducible from them as their proper ground of decision. The case of *Brewing Co. v. Canandaigua,* 15 *App. Div.* 139, 44 *N. Y. Supp.* 317 (affirmed in 162 *N. Y.* 631, 57 *N. E.* 1113), which concerned a public sewer, recognizes this same principle.

In the instant case the principle established by these cases has no pertinency for the question presented by the facts has nothing to do with whether a particular thing authorized to be

done has in fact been done in the manner and by the agency designated by the statute.

These cases which have been cited and strongly relied upon by the defendants in support of their contention, appear to be cases in which the exemption from assessment had reference to future improvements. The complainant emphasizes this feature as distinguishing the cited authorities from the case now before the court. His position is that a distinction is to be drawn between those cases in which the municipality assumes to grant exemption from the burden of present improvements and those in which the attempt is made to exempt from the burden of future ones, that the former is permissible while the latter is not. In none of the cases cited, however, does it clearly appear that such a distinction is recognized, and the decision made to rest thereon. In my judgment the distinguishing consideration which makes these cases inapplicable here is that to which I have hereinabove referred. Whether there is merit in the distinction suggested by the solicitor for the complainant, I do not pause to consider.

This is not a case where a local improvement of a city street is involved and a scheme is adopted of casting a portion of the burden of the cost thereof upon the abutting properties. If it were, and the usual plan were followed as in the cited cases, then it may be conceded that the equitable portion of the cost assessable against each property according as the estimated benefit and damage would determine would have to be imposed in obedience to the specified procedure. Where commissioners are designated to appraise the benefits and damages as the elements upon which to base the ultimate assessments, no other agency, not even the legislative body of the city, is permitted to do so. Such, as indicated, is the effect of the cases above cited.

But no question of this kind is involved in the present suit. For here the transaction between the city and the Bancrofts was in no wise related to a local municipal improvement designed to benefit both the city at large and those of its citizens who owned property abutting on or located in the neighborhood or district specially benefited by such improvement. There is no room in this case for the application of the principle which underlies the statutory law with respect to special assessments for local muni-

cipal improvements, viz., that the cost should be equitably distributed among all those who are the beneficiaries of the improvement. The transaction with which we are here concerned deals with land lying outside the city limits. The Bancrofts, so far as the land in question is concerned, were in 1889 liable neither for general taxes to the city nor for special assessments. Their land lying within two miles of the corporate limits of Wilmington, the city had power conferred on it by law to make purchase thereof for park purposes. Possessing this power, the city proceeded to purchase nearly six acres and as a consideration therefor paid the nominal price of one dollar and as a further consideration entered into an agreement to construct the roadway in question. Now, the tract having since been brought within the city limits, the city is attempting to compel the present owner in substance to reimburse it for a portion of the outlay necessitated by its covenant of nearly twenty years ago. The price it paid is not assailed as an unfair one. That price was the cost of building a road, which presumably the city had estimated and deemed to be a fair one. Not only did the city secure a considerable body of land for this price, but it secured in addition a covenant on the part of the grantors which protected the new park from unsightly buildings or buildings so placed as to mar the beauty of the bordering landscape.

Certainly if an individual had been the grantee in this deed instead of the city, the covenant to construct the roadway would have been binding and he would have no claim on the grantors to reimburse him a portion of his expense. The case being relieved from the questions which inhere in the situation where municipal improvements are authorized and its citizens both generally and locally are called upon to bear their just and proportionate share of the cost as ascertained in a prescribed manner, the city is as much bound to keep its covenant and as little entitled to compel its covenantees to share the expense incident thereto as would be an individual.

I know of no principle of law which would forbid a city authorized to purchase outside land for park purposes to agree as a consideration that it will do certain construction work thereon. The case of *Vrooman v. City of Toledo*, 5 *Ohio App.* 222, also 230, upholds the validity of a covenant in a deed on the part of the

city of Toledo to construct a certain boulevard over the premises conveyed and which it was authorized by general power in its charter to purchase. The city not having chosen to defray the cost of the boulevard as provided in that section of its charter which authorized assessments upon benefited properties, but having chosen to proceed under its authority to purchase real estate and pay therefor with funds raised out of the general tax list, it was held that the transaction there involved was one of purchase, that the covenant to construct the boulevard was not *ultra vires*, and that the grantor and covenantee could not be called upon to pay any of the cost of the work which the city attempted to assess upon him. Whether the land in that case lay within the corporate limits does not appear from the report of the case. In *City of Omaha v. Megeath*, 46 *Neb*. 502, 64 *N. W*. 1091, it was held that the city could not compel its grantor in a deed conveying to it land for a park, or his successor in title, to pay a portion of the cost of constructing a street around the park, where the city had covenanted in the deed itself to construct the street. Here, too, the transaction appears to have been a plain one of purchase. This case was followed in *Brown v. Palmer*, 66 *Neb*. 287, 92 *N. W*. 315. In *Coit v. City of Grand Rapids*, 115 *Mich*. 493, 73 *N. W*. 811, the right to compel an owner of property to bear a portion of the cost of constructing a sewer was before the court for determination. The owner had conveyed to the city land through which the sewer was to be constructed and, in consideration of the conveyance, the city had covenanted not to assess the grantor for either the construction or maintenance of the sewer. Inasmuch as the city had authority to construct sewers only by using its general funds, and could assess special districts only for their maintenance, it was held that the contract was one of purchase and sale which the city was authorized to make, that the covenant not to assess the grantor for the construction cost was valid, but that the agreement to exempt from maintenance cost was *ultra vires*. This case was approved in *Leggett v. Detroit, supra*, cited by the defendants, but distinguished on a ground that I need not here discuss.

The cases last referred to all recognize and rely on the principle that where a city in its deed of purchase covenants to do a certain thing, it cannot thereafter call upon its covenantee to help defray

the cost incurred by it in performing its covenant. When the City of Wilmington covenanted with the Bancrofts to build the roadway in question, it had no power to assess them specially or to tax them generally to raise funds to do the work. It is difficult to see on what principle it can now be authorized to repudiate its solemn covenant then made. The legislative power of the State insofar as it attempts to authorize such repudiation of the covenant unwarrantably tampers with contractual obligations.

It is hardly necessary to observe that this opinion in no wise ignores the general rule first hereinbefore adverted to, viz., that a municipal corporation is without authority to bargain away its right to levy and collect taxes generally or to assess for improvement benefits locally.

The view taken with respect to the point thus far discussed, makes it unnecessary to prolong this opinion by a consideration of the other two points raised by the complainant, viz., (a) that the roadway in question is not a public street, but (b) if it is, the complainant's property does not adjoin or abut upon the same.

Let a decree be prepared in accordance with the prayers of the bill.