**HEARN BROTHERS, INC., a corporation of the State of Delaware, Plaintiff,**

v.

**CITY OF NEWARK, a corporation of the State of Delaware, Defendant.**

Superior Court of Delaware, New Castle.

Dec. 23, 1969.

Wayne N. Elliott, Wilmington, for plaintiff.

Clyde M. England, Jr., Wilmington, for defendant.

QUILLEN, Judge.

The Newark City Council enacted ordinance number 65-62 approving the annexation and rezoning of certain property owned by Hearn Brothers, Inc., and simultaneously, by resolution number 65-X, approved the development and plot plan recommended by the Newark Planning Commission. The development plan, worked out between Hearn Brothers, the City Engineer and the Planning Commission, included a capital expenditure by the City of approximately $32,000 to bring City water and sanitary sewer lines to the site, with an estimated annual net revenue return to the City of $14,600. Within the resolution, the City Council provided that the subdivision plot plan, with certain special additional conditions, "be incorporated in the agreement".

Following the adoption of the ordinance and resolution, Hearn Brothers executed an agreement with the City under the terms of which the City agreed to extend water and sewer lines to the site. The agreement was signed on behalf of the City by J. Francis Neide, the City Manager, with the attestation of the City Secretary. This agreement was executed on February 1, 1966.

Construction proceeded and one year later, on February 9, 1967, the City assessed Hearn Brothers $2,966.48 for installation of the water line, and $1,540.00 for the extension and installation of the sewer line. Despite Hearn Brothers insistence that the assessments were invalid, they continue, with interest and penalties, as a lien upon the property.

In 1969, this declaratory judgment action was brought against the City by Hearn Brothers seeking to have the assessments declared invalid and the liens against the property dissolved.

In response, the City admits the execution of the agreement, but contends that the agreement itself is invalid because it was executed without the authorization and approval of the City Council, and, further, that such an agreement is ultra vires in that it is beyond the power of the City to exempt lands from the assessment ordinances of the City of Newark. The matter comes before the Court, with the facts undisputed, on cross motions for summary judgment.

The defenses interposed by the City of Newark are without merit. The facts as shown in the record and the briefs of both parties indicate clearly that the City Council approved, by ordinance and resolution, the terms of a development plan previously negotiated by and between Hearn Brothers, the City Engineer and the Newark Planning Commission. The procedure followed was in accordance with the Charter and Ordinances of the City of Newark which set forth the duties and powers of the City Manager.

City Charter, Section 701.4:

"The City manager shall be the chief administrative officer of the City. He shall be responsible to the Council for the administration of all City affairs placed in his charge by or under this Charter. He shall have the powers and duties enumerated in this Charter and by ordinance or resolution, and, * * *
(4) he shall see that all laws, provisions of this Charter, franchises, and acts of the Council, subject to enforcement by him or by the officers subject to his direction and supervision, are faithfully executed; * * *

(10) he shall execute on behalf of the City, when authorized by Council, all agreements, contracts, bonds, deeds, leases, and other documents necessary to be executed. He shall counter-sign all orders, checks and warrants authorized by Council and drawn on the treasury for payment of money, which signature may be by facsimile."

Newark Subdivision Ordinance, § 1213.-31:

"Approved applications and plans will be referred to the City Manager for complete administration and enforcement including execution of agreement (approved by City Solicitor) between the developer and the City."

In this case, the order of events created an agreement between Hearn Brothers and the City of Newark, which was then formally approved and formally executed in accordance with the procedure set forth in the Charter and Ordinance provisions above quoted. All the essential terms of the contract had been negotiated and agreed upon prior to the formal approval and adoption of the contract by City Council. The execution by the City Manager of the ultimate written agreement was the final formality required in connection with the contract, and approval by City Council preceded action thereon by the City Manager. Had the Manager executed an agreement with Hearn Brothers without the approval of Council, his independent action may be unauthorized and without force and effect as to any obligation sought to be imposed thereby upon the City of Newark. But where the City Council adopts an ordinance and resolution clearly indicating its approval of certain contractual obligations, the City Manager, in executing the contract, performs an administrative act as the enforcement officer for City Council, and the terms of the contract become binding upon all the parties thereto, including the City of Newark.

The defendant argues that the agreement, however, is ultra vires in that it is beyond the power of the City to waive special assessments on City lands. It is undisputed that the assessment sought to be imposed by the City of Newark on the Hearn Brothers property is one for installation expenses, not for maintenance, upkeep or use. It is also clear that the agreement and its terms, which City Council adopted and approved, had been negotiated and arrived at before annexation was completed and at a time when the property in question was located outside the City limits, in New Castle County, and was not subject to prior installation assessment ordinances then in force against City property.

The leading Delaware case on the subject area is Bancroft v. Mayor & Council of Wilmington, 14 Del.Ch. 185, 123 A. 602 (Ch.1924). Although defendant argues that the case is not dispositive of the issue currently before the Court because it in-

volves an agreement whereby the City acquired title to the land under a purchase agreement, the Court tends to disagree and to find that the *Bancroft* case, which cites with approval Coit v. City of Grand Rapids, 115 Mich. 493, 73 N.W. 811 (1898), supports Hearn Brothers on the issue of ultra vires raised by the City of Newark.

In *Bancroft, supra,* the plaintiff in 1889 deeded nearly six acres of land, located in the County, to the City of Wilmington for use as a public park, in consideration for which the City agreed to construct sidewalks and a roadway over which the grantors, their heirs and assigns would have free access. Subsequently, the parkland was annexed to the City of Wilmington, and a special assessment was levied upon all improved roadways in the City. The successors of the original grantors refused to pay the assessments levied for the years 1918 through 1922. The Chancellor held for Bancroft's successors in title.

"* * * The transaction with which we are here concerned deals with land lying outside the City limits. The Bancrofts, so far as the land in question is concerned, were in 1889 liable neither for general taxes to the city nor for special assessments. Their land lying within two miles of the corporate limits of Wilmington, the city had power conferred on it by law to make purchase thereof for park purposes. Possessing this power, the city proceeded to purchase nearly six acres and as a consideration therefor paid the nominal price of one dollar and as a further consideration entered into an agreement to construct the roadway in question. Now, the tract having since been brought within the city limits, the city is attempting to compel the present owner in substance to reimburse it for a portion of the outlay necessitated by its covenant of nearly twenty years ago. The price it paid is not assailed as an unfair one. That price was the cost of building a road, which presumably the city had estimated and deemed to be a fair one.

Not only did the city secure a considerable body of land for this price, but it secured in addition a covenant on the part of the grantors which protected the new park from unsightly buildings or buildings so placed as to mar the beauty of the bordering landscape.

Certainly if an individual had been the grantee in this deed instead of the city, the covenant to construct the roadway would have been binding and he would have no claim on the grantors to reimburse him a portion of his expense. The case being relieved from the questions which inhere in the situation where municipal improvements are authorized and its citizens both generally and locally are called upon to bear their just and proportionate share of the cost as ascertained in a prescribed manner, the city is as much bound to keep its covenant and as little entitled to compel its covenantees to share the expense incident thereto as would be an individual.

*    *    *    *    *    *

The cases last referred to all recognize and rely on the principle that where a city in its deed of purchase covenants to do a certain thing, it cannot thereafter call upon its covenantee to help defray the cost incurred by it in performing its covenant. When the City of Wilmington covenanted with the Bancrofts to build the roadway in question, it had not power to assess them specially or to tax them generally to raise funds to do the work. It is difficult to see on what principle it can now be authorized to repudiate its solemn covenant then made. The legislative power of the state insofar as it attempts to authorize such repudiation of the covenant unwarrantably tampers with contractual obligations." (Citations omitted.)

In the *Coit* case, *supra*, the plaintiff, in consideration of $1.00, gave the City a perpetual sewer easement across his land, conditioned upon the plaintiff not being assessed for construction and maintenance

expenses. When the plaintiff resisted the subsequent City assessment for the costs of both installation and upkeep, the Court held that the agreement by the City not to assess for maintenance was void because the City is without power to contract away its right to impose future taxes, but the agreement to install the sewer without cost to the plaintiff was a valid exercise of power whereby the City and the plaintiff had both benefited as a result of a fully executed contract.

"The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice."

In the present case, the City of Newark did not receive fee title to any land. Although it was not argued, it does appear that the City may have received certain perpetual easement rights as in the *Coit* case. In addition, the City obviously considered the handsome revenue return sufficient and adequate consideration to support the bargain. No realistic view of the relationship between the parties can be achieved by viewing the annexation ordinance in isolation as the City suggests. It simply did not happen that way.

It would appear to me that, under the *Bancroft* case, the City should not be relieved of the obligations it freely undertook as part of the bargained agreement. But the Court need not go so far as to equate the present case with the *Bancroft* case and, since the nature of the consideration, specifically increased future revenue, has been questioned insofar as the *Bancroft* purchase rationale is concerned, the Court can rest its decision on a narrower ground.

The "home rule" statutes enable the City of Newark to exercise full municipal powers. 22 Del.C. § 801 et seq. Under that legislative grant of power the City enacted its subdivision ordinances, §§ 1209 and 1210 of which provide specifically for the power to exempt certain properties from the payment of installation costs.

Section 1209.00:

"Cost of installation

A. The cost of installing all water mains and appurtenances: such as valves, service lines, etc. within the subdivision *shall* be borne by the developer.
B. If the subdivision is a considerable distance from the nearest City water main, the developer *may* be required to pay for all or a portion of the cost of extending the main to the subdivision." (Emphasis added.)

Section 1210.00:

"*Cost of Installation.* The cost of installing all sanitary sewers, manholes, laterals, etc. within the subdivision *shall* be borne by the developer. If the subdivision is a considerable distance from the nearest City sewer main, the developer *may* be required to pay for all or a portion of the cost of extending the main to the subdivision." (Emphasis added.)

Thus, even if it be assumed that the *Bancroft* case requires specific legislative authority before these installation assessments can be bargained away by a municipality, it is clear the subdivision ordinances were passed in specific contemplation of precisely such power on the part of the City. In short, the City Council by legislation has created the power for the City to do what it agreed to do in this case.

Based upon the foregoing, the agreement with Hearn Brothers, executed on behalf of the City of Newark by the City Manager wherein the City agreed to pay the installation costs for extending sewer and water lines to the Hearn Brothers property, was authorized and approved by ordinance and resolution of the City Council, and such act by the City was a proper exercise of power and not ultra vires.

The assessments are invalid and the liens against the property should be dissolved. The plaintiff's motion should be granted and the defendant's denied. An order, on notice, should be presented by Hearn Brothers within a week.