**NEW CASTLE COUNTY, Defendant below, Appellant,**

v.

**The MAYOR AND COUNCIL OF NEW CASTLE, a Municipal Corporation of the State of Delaware, et al., Plaintiffs below, Appellees.**

Supreme Court of Delaware.

Submitted Oct. 18, 1976.

Decided March 2, 1977.

Joseph M. Bernstein, Wilmington, for defendant below, appellant.

Henry N. Herndon, Jr., and Edward M. McNally of Morris, James, Hitchens & Williams, Wilmington, for plaintiffs below, appellees.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

The City of New Castle sought a declaratory judgment in the Court of Chancery as to the validity of a 1975 New Castle County Ordinance increasing the sewer service rates charged to the City and its residents. This increase, the City argued, was in violation of a 1950 Agreement between the City and the County which provided for the interconnection of the City and County sewage systems and established the rate which the City would charge its residents and turn over to the County.[1]

The County challenged the rate provisions of the Agreement, claiming that the

---

1. The following are the relevant portions of the Agreement:

"1. Second Party [the County], acting as the agent of First Party [the City], agrees to fully maintain and operate in good and serviceable condition the sewer system of the City of New Castle, to treat and dispose of sewage collected therein, and to supervise and carry out such new construction or extension of present sewer facilities as First and/or Second Parties shall from time to time consider necessary.

"2. First Party, in consideration of the services to be rendered to it hereunder by Second Party, agrees with Second Party to turn over or relinquish to Second Party all revenue derived from a sewer service charge in the City of New Castle, based on water consumption, as follows:

"(a) For each sewer connection, or for each living or business unit if there be more than one such using a common sewer connection, in the City of New Castle, $6.00 for each 6 months period beginning on the first days of April and October in each year for the first 60,000 gallons, or any part thereof, consumed during such semi-annual period, plus an excess charge for each such semi-annual period of $.10 for each 1,000 gallons consumed over 60,000 and up to 600,000 gallons; and $.09 for each 1,000 gallons consumed over 600,000 and up to 1,800,000 gallons during each of the said semi-annual periods."

provisions were (1) *ultra vires* and (2) for an excessive term, and, therefore, against public policy. The Court of Chancery held, as a matter of law, that the rate provisions of the Agreement were neither *ultra vires* nor for an excessive term. The County appeals the *ultra vires* ruling only.

The determinative issue is whether the furnishing of sewer facilities and establishing a rate of compensation for such service constituted a governmental or a proprietary function. The implication and consequence of this governmental-proprietary distinction has recently been noted by this Court:

> "Under general rules, if such agreement concerns a proprietary function it is valid *so long as the time and conditions are reasonable,* see 4 Antieau, County Law § 31.07 (1966); but if a governmental function is involved, such agreement is invalid as being *ultra vires* and contrary to public policy."

*Levy Court of Kent County v. City of Dover,* Del.Supr., 333 A.2d 161 (1975); see also 2 McQuillen, *Municipal Corporations,* § 10.-05 (rev.ed.1966).

While the characterization of a function as either governmental or proprietary is often difficult, and there are few hard and fast rules distinguishing one capacity from the other, this Court has considered the geographical and jurisdictional limits of the government involved as most relevant. Compare *Levy Court of Kent County v. City of Dover, supra.* with *Delmarva Enterprises, Inc. v. Mayor & Council of City of Dover,* Del.Supr., 282 A.2d 601 (1971).

■ In the instant case, the County was under no obligation to provide sewer service to the City, an area not within the County's governmental limits. Rather, the County chose to exercise the option, given it by Statute [46 *Del.L.* c. 294 § 1], of entering into an agreement with the City to provide those services. Moreover, both the City and

County benefited from the arrangement: the City by saving the expense of maintaining its own sewage facilities; the County by being able to run its system through rather than around the City, thus utilizing the City's pre-existing facilities.

In *Delmarva Enterprises, Inc. v. Mayor & Council of City of Dover, supra.* at 602, this Court stated that a city "in supplying water and sewer services [to an area outside the city limits] is acting in its proprietary capacity". Cf. *Bancroft v. Mayor & Council of Wilmington,* 14 Del.Ch. 185, 123 A. 602 (1924). We reiterated that conclusion in *Levy Court of Kent County v. City of Dover, supra.,* wherein an agreement, by which the County relinquished decision-making power over sewer and water facilities within County jurisdictional limits was held *ultra vires.*

The County seeks to distinguish these cases by arguing that although the supplying of sewer services may, at times, be a proprietary activity, the determination of the rate of compensation to be charged for such services is always a nondelegable governmental function. The cases cited by the County in support of this proposition are: *Mitchell v. City of Mobile,* 244 Ala. 442, 13 So.2d 664 (1943); *Johnson v. State,* 107 Ga. App. 16, 128 S.E.2d 651 (1962); *Terrace Heights Sewer Dist. v. Young,* 3 Wash.App. 206, 473 P.2d 414 (1970). We find the cited cases inapposite on their facts.

■ The County's attempted distinction between providing sewage facilities and establishing a rate of compensation for those facilities appears to be the result of an unacceptably narrow construction of 46 *Del.L.* c. 294 § 1,[2] the enabling legislation in effect at the time the Agreement was executed. While a subsequently-enacted Statute expressly authorized the County to contract with a city or town as to the charge to be made for the County's sewer services,[3]

**2.** 46 *Del.L.* c. 294 § 1 provided previously:

"[T]he Levy Court shall fix by resolution the amount of money which shall be paid by the owner of any property for the privilege of connecting any building thereon to the County sewers, or to any portion of the County

sewer system, this amount to be known as the 'sewer use fees', and the Levy Court may from time to time change such amounts . . . ."

**3.** 9 *Del.C.* § 2202, (effective 1951) presently provides in pertinent part:

we find this same authority implied from a fair reading of Chapter 294. Chapter 294 apparently fulfilled a need for legislation enabling the County to contract with municipal corporations not within its governmental jurisdiction. Its predecessor provision, 1935 *Code*, Ch. 43, § 24, failed to provide for such a situation. Necessarily implied in Chapter 294, in our opinion, was the concomitant authority for the County, when negotiating with a municipal corporation, to contract for a reasonable rate of compensation for its provided services. This conclusion, we believe, is consistent not only with the fundamental idea that the power to contract must include the power to agree upon an essential of the contract, i.e., the consideration, but also with the rationale underlying our decisions in both *Delmarva Enterprises, Inc. v. Mayor & Council of City of Dover, supra.* and *Levy Court of Kent County v. City of Dover, supra.*

Accordingly, we conclude that the agreement as to rate of compensation for the service to be performed was a proprietary function and, therefore, not *ultra vires.*

Affirmed.

"In addition to other powers which it has, the County may, under this chapter:

\* \* \* \* \* \*

"(7) Enter into a contract or contracts with any city or town situated within the County providing for the disposal of sewage collected by any sewerage system either for a specified or an unlimited time and for the charge to be made for such service by any such city or town."